557 S.E.2d 378

**William T. MCCOY and Beverly McCoy, Plaintiffs Below, Appellants,**

v.

**CAMC, INC., Jay Requarth, M.D., and John Chapman, M.D., Defendants Below, Appellees.**

No. 29699.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2001.

Decided Dec. 4, 2001.

Roger D. Forman, Esq., Forman & Crane, Charleston, West Virginia, Attorney for the McCoys.

James D. McQueen, Jr., Esq., Regenia L. Mayne, Esq., Brian Casto, Esq., McQueen, Harmon & Murphy, Charleston, West Virginia, Attorneys for Dr. Requarth.

Aaron B. Alexander, Esq., Kay, Casto & Chaney, Charleston, West Virginia, Attorney for Dr. Chapman.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on March 1, 2001. In that order, the circuit court denied a motion of the appellants and plaintiffs below, William and Beverly McCoy, to reinstate the original complaint in this medical malpractice case filed against the appellees and defendants below, Charleston Area Medical Center (hereinafter "CAMC")[1], Jay Requarth, M.D., and John Chapman, M.D., and to allow the complaint, once reinstated, to be amended to include additional defendants and additional causes of action. In this appeal, the appellants contend that the circuit court erred by refusing to permit them to designate a new expert and to proceed with an amended complaint on a new theory of the case.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

I.

We begin by noting that the facts and procedural history of this case are lengthy, but necessary to an understanding of the issues in this case. On January 3, 1995, the appellant, Mr. McCoy, underwent double coronary bypass surgery at CAMC. The surgery was performed by Dr. Requarth with Dr. Chapman assisting and was completed without incident. However, during the recovery period, Mr. McCoy's sternum separated and his doctors suspected he was in the early stages of infection.

Mr. McCoy was returned to surgery on January 11, 1995, at which time Dr. Requarth rewired his sternum. Cultures taken during the surgery were negative for infection. However, following the surgery, Mr. McCoy developed a staph infection requiring an extensive course of antibiotic treatment. He was discharged from the hospital on January 24, 1995, but had to continue antibiotic treatment at home under the supervision of home health care.

On January 3, 1997, the McCoys filed this civil action alleging that an employee of

---

1. As discussed herein, CAMC was dismissed from the case by agreement of the parties on October 30, 2000, and is not a party in this appeal.

CAMC under the supervision of Drs. Requarth and Chapman carelessly or negligently moved Mr. McCoy following his bypass surgery causing his sternum to separate. The complaint also alleged that the doctors failed to adequately warn Mr. McCoy of the risks and hazards of the surgical procedure including the possibility of sternum dishesion and infection. The complaint further asserted that Mr. McCoy acquired a staph infection as a result of the failure of Drs. Requarth and Chapman to follow approved antisepsis procedures during the surgery to rejoin his separated sternum. Finally, Mrs. McCoy alleged a loss of consortium from the resulting injury.

On September 11, 1997, the circuit court entered a scheduling order setting the case for trial on July 13, 1998.[2] In November 1997, the McCoys filed a document identifying their fact and expert witnesses. Randolph Scheerer, M.D., was listed as their expert witness. Shortly thereafter, the insurer of Drs. Requarth and Chapman went into receivership and the bankruptcy court stayed all proceedings for eleven months.

The bankruptcy stay was lifted in November 1998. However, counsel for the McCoys made no immediate effort to resume discovery or otherwise work on the case.[3] A new scheduling order was entered on March 1, 1999, and trial was set for May 15, 2000. On April 1, 1999, counsel for Drs. Requarth and Chapman served the McCoys with interrogatories to ascertain their expert witness' opinions. Because the McCoys did not answer the discovery, Drs. Requarth and Chapman filed a motion to compel on June 16, 1999.

Subsequently, a status conference was held on September 29, 1999. Counsel for the McCoys did not attend, and as a result, the circuit court suspended the previous scheduling order but did not set a new trial date. As a result of the McCoys' failure to cooperate, Drs. Requarth and Chapman filed a motion to dismiss for failure to prosecute on

November 23, 1999. At a scheduling conference on December 3, 1999, the defendants agreed to hold their motion in abeyance and proceed with a new scheduling order. Trial was then scheduled for December 4, 2000.

Pursuant to the new scheduling order, the McCoys were required to disclose their experts by February 15, 2000. This time, the McCoys identified Randolph Scheerer, M.D., and Joseph Chiota, M.D., as expert witnesses. No other information about the experts was provided. On May 10, 2000, counsel for CAMC noticed the depositions of the two identified experts. Counsel for Dr. Requarth then filed a set of new interrogatories requesting Rule 26 information about the experts' opinions. Shortly thereafter, on June 5, 2000, the McCoys filed a "motion to substitute expert witness" attempting to substitute Daniel Davis, M.D., for Dr. Scheerer, who was purported to be "no longer available to testify."

Dr. Requarth objected to the proposed substitution and asked the circuit court to intervene.[4] During a telephonic conference, counsel for the McCoys claimed he could not locate Dr. Scheerer and thus, could not provide any Rule 26 information in response to the interrogatories. The court directed the McCoys' counsel to provide Dr. Requarth's counsel with Dr. Scheerer's last known address by June 21, 2000. The McCoys' counsel later faxed a letter to defense counsel stating that he had no information on Dr. Scheerer's address. Dr. Requarth's attorney then found Dr. Scheerer's address on the Internet and sent it to the counsel for the McCoys with the request for the Rule 26 information. He did not respond.

On July 5, 2000, Dr. Requarth filed a motion to dismiss for failure to prosecute or in the alternative, to compel response to discovery requests and Rule 26 information. A few days later, CAMC also filed a motion to dismiss or alternatively, a motion for sum-

---

**2.** The McCoys conducted no discovery before this date, nor did they respond to the defendants' discovery requests. As a result, the defendants filed a motion to compel on April 8, 1997.

**3.** At this point, we note that the McCoys were represented by attorney Steven Miller during most of the proceedings before the circuit court. As discussed herein, the McCoys retained attorney Roger Forman just before the motion to reinstate the case was filed with the circuit court.

**4.** On June 27, 2000, Dr. Chapman retained separate counsel.

mary judgment. In response, counsel for the McCoys claimed that Mr. McCoy's file had been destroyed in a fire in his office and that he had been forced to recreate and duplicate the file causing a lull in the discovery process. For the first time, counsel for the McCoys asserted that the original cardiac surgery performed by Dr. Requarth was unnecessary; that Mr. McCoy's pain was not cardiac in nature; and that he was not a good candidate for cardiac surgery.

On August 17, 2000, the circuit court held a hearing on the defendants' motions to dismiss and the McCoys' motion to substitute an expert witness. In a letter to counsel dated September 8, 2000, the circuit court denied the McCoys' motion to substitute an expert witness finding no good cause had been shown. The circuit court further agreed to grant the defendants' motion to dismiss unless the McCoys could make available for deposition within ten days a previously disclosed expert witness who could testify to the breach of the standard of care alleged in the complaint. The letter further provided that *if no date for the expert's deposition was tendered in ten days, the dismissal would automatically take effect.* The letter ended with a request that counsel for Dr. Requarth prepare an order with appropriate findings and conclusions consistent with the letter preserving all appropriate objections and exceptions.

On September 25, 2000, the McCoys provided additional Rule 26 information. However, the information dealt with Dr. Chiota and related solely to the new allegations that the original surgery was not necessary. On October 13, 2000, Dr. Requarth filed a "motion to enter order" with the circuit court indicating that an order had been prepared as directed by the court in its September 8, 2000 letter and forwarded to the McCoys' counsel for review and approval. However, counsel for the McCoys had failed to respond. On October 16, 2000, the circuit court entered the order which related its rulings from the August 17, 2000 hearing as set forth in the September 8, 2000 letter.

That same date, the McCoys filed a motion to amend the complaint.

On October 18, 2000, Dr. Chapman filed a motion to enter an order of dismissal arguing that the McCoys had failed to comply with the directives of the court. Dr. Requarth joined in the motion on October 19, 2000. The circuit court granted the motion to dismiss on December 20, 2000.[5] By new counsel, the McCoys filed a motion to reinstate the case and amend the complaint on February 8, 2001. The defendants objected arguing that no good cause was shown. The circuit court agreed and denied the motion in the final order entered on March 1, 2001. This appeal followed.

### II.

The McCoys first assign as error the circuit court's refusal to allow them to designate a new expert witness. Rule 16 of the West Virginia Rules of Civil Procedure directs trial courts to enter scheduling orders limiting, *inter alia*, the time the parties have to complete discovery. In addition, Rule 16 vests in trial courts the discretion to modify the scheduling order. Thus, it is clearly within the trial court's discretion to refuse to allow a party to designate or substitute an expert witness after the expiration of the deadline set forth in the scheduling order. *See State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 161, 451 S.E.2d 721, 727 (1994).

In this case, the circuit court denied the McCoys' motion to substitute an expert witness finding that no good cause had been shown. The record reveals that the McCoys initially indicated that they needed to substitute a new expert witness because Dr. Scheerer was "no longer available to testify." When questioned about Dr. Scheerer's availability, counsel for the McCoys stated that Dr. Scheerer could not be located. However, Dr. Requarth was able to locate Dr. Scheerer using the Internet in fifteen minutes. When contacted, Dr. Scheerer stated that he had no recollection of being retained in this case,

---

**5.** As previously noted, CAMC was voluntarily dismissed without prejudice from the case by stipulation of the parties on October 30, 2000.

had no file relating thereto, and no longer acted as an expert in this type of case.

The McCoys offered no further information to support their motion to substitute an expert witness. However, shortly thereafter, they did offer a new theory of their case although they presented no motion to amend the complaint at that time. Given these facts and circumstances, we do not find that the circuit court abused its discretion by denying the McCoys' motion to substitute an expert witness.

▮ The McCoys also claim that the circuit court erred by refusing to allow them to amend their complaint and assert a new theory of the case. Rule 15(a) of the West Virginia Rules of Civil Procedure governs the amendment of pleadings and specifies that "leave [to amend] shall be freely given when justice so requires." In Syllabus Point 3 of *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), this Court held that:

> The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W.Va.R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

However, this Court has also stated that "[t]he liberality allowed in the amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect his case for a long period of time." *Mauck v. City of Martinsburg*, 178 W.Va. 93, 95, 357 S.E.2d 775, 777 (1987). "A motion for leave to amend a complaint is addressed to the sound discretion of the trial court." *Id.*, 178 W.Va. at 96, 357 S.E.2d at 778.

As noted above, the record in this case shows that the McCoys filed their motion to amend the complaint on the same date the circuit court entered the order indicating that the case was going to be dismissed for failure to prosecute if the parties did not comply with the directives of the court. As noted in the circuit court's September 8, 2000 letter to the parties, the McCoys had not filed a motion to amend the complaint even though they had made a motion to substitute an expert witness. Thus, even though the McCoys began asserting a new theory of their case as early as July 2000, they did not file a motion to amend the complaint until October 16, 2000. Given these facts and circumstances, we do not find that the circuit court abused its discretion by denying the McCoys' motion to amend the complaint. In *Mauck, supra*, we stated that "[l]ack of diligence is justification for a denial of leave to amend where the delay is unreasonable[.]" 178 W.Va. at 95, 357 S.E.2d at 777. Clearly the delay in filing the motion to amend in this case was unreasonable.

▮ Next, the McCoys assert that the circuit court erred by dismissing the case with prejudice. Rule 41(b) of the West Virginia Rules of Civil Procedure provides that a case may be dismissed for "failure of the plaintiff to prosecute or to comply with these rules or any order of court[.]" As noted by the McCoys, this Court has stated that "[b]ecause of the harshness of the sanction, a dismissal with prejudice should be considered appropriate only in flagrant cases." *Dimon v. Mansy*, 198 W.Va. 40, 45, 479 S.E.2d 339, 344 (1996). "[W]e recognize that dismissal based on procedural grounds is a severe sanction which runs counter to the general objective of disposing cases on the merit." *Id.*, 198 W.Va. at 45–46, 479 S.E.2d at 344–45.

However, this Court also stated in *Dimon* that:

> [T]he determination [of] whether the plaintiff has failed to move the case in a reasonable manner is a discretionary call for the circuit court. The power to resort to the dismissal of an action is in the interest of orderly administration of justice because the general control of the judicial business is essential to the trial court if it is to function. To this extent, Rule 41(b) is still good law in that granting authority to trial judges to control their dockets through

dismissals is consistent, not debilitative, of sound judicial administration. It is equally clear that it is the plaintiff's obligation to move his or her case to trial, and where the plaintiff fails to do so in a reasonable manner, the case may be dismissed as a sanction for the unjustified delay. To be clear, we squarely hold that a plaintiff has a continuing duty to monitor a case from the filing until the final judgment, and where he or she fails to do so, the plaintiff acts at his or her own peril.

*Id.,* 198 W.Va. at 45, 479 S.E.2d at 344. In this case, the record shows that the McCoys clearly failed to move their case to trial in a reasonable manner. This Court is certainly mindful of the delays that occurred in this case through no fault of the McCoys such as the bankruptcy stay. Likewise, we obviously do not fault the McCoys for the delay caused by the destruction of their case file at their attorney's office as a result of a fire.

Nonetheless, the record is replete with evidence of delays in the prosecution of the case caused by the McCoys. For instance, at the outset, the McCoys made no effort to initiate discovery until the first scheduling order was entered nine months after the complaint was filed. After the bankruptcy stay was lifted, the McCoys again failed to take any action with respect to discovery matters. Furthermore, the McCoys never requested or noticed any deposition during the entire pendency of this action.

In addition, the McCoys failed to follow the directives of the circuit court. In particular, the McCoys failed to attend a status conference on September 29, 1999. As a result, the prior scheduling order was suspended. As previously discussed, the McCoys based their motion to substitute an expert witness upon the contention that Dr. Scheerer could no longer be located. However, defense counsel was able to find Dr. Scheerer in a matter of minutes using the Internet. Finally, on two occasions, counsel for the McCoys failed to sign orders reflecting rulings of the circuit

court at hearings resulting in a delay of entry of those orders. Based on these facts, we do not find that the circuit court abused its discretion by dismissing the case with prejudice.[6]

■ Finally, the McCoys contend that the circuit court abused its discretion in denying their motion to reinstate the case and file an amended complaint. In Syllabus Point 1 of *Dimon, supra,* this Court held that:

> "Under W.Va.R.Civ.P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case." Syl. Pt. 1, *Brent v. Board of Trustees of Davis & Elkins College,* 173 W.Va. 36, 311 S.E.2d 153 (1983).

"Traditionally, our scope of review, even where reinstatement is timely sought, is limited. It is only where there is a clear showing of an abuse of discretion that reversal is proper." *Dimon,* 198 W.Va. at 46, 479 S.E.2d at 345.

■ The McCoys argue once again that the discovery of a new theory of the case in July 2000 constituted good cause for reinstatement of the case and amendment of the complaint. They also assert that they should not be punished for the actions of their former attorney. This Court has held that:

> [T]he plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defendant does show substantial prejudice, then the burden of production shifts to the plaintiff to

---

**6.** We note that this Court is upholding the dismissal of this case based on the McCoys' failure to comply with the orders of the circuit court. Although the defendants' motions to dismiss the case were predicated upon the McCoys' failure to prosecute the case, the circuit court's dismissal

of the case was clearly based on the McCoys' failure to comply with the court's prior rulings, in particular the order to make an expert available for deposition as set forth in the September 8, 2000 letter.

establish that the proffered good cause outweighs the prejudice to the defendant. Syllabus Point 3, in part, *Dimon, supra.*

As discussed in depth above, with a few exceptions, the delays in prosecuting this case were caused by the lack of diligence of the McCoys' first attorney. It is unfortunate he neglected the case and failed to adequately represent the McCoys. Rule 1.1. of the Rules of Professional Conduct mandates that "[a] lawyer shall provide competent representation to a client." In light of the dismissal, the McCoys may have a cause of action against their former attorney; however, they have failed to satisfy the burden of establishing good cause for reinstating this case. A new theory of the case cannot excuse the unreasonable delays that have occurred since the complaint was filed in January 1997. Thus, we do not find that the circuit court abused its discretion by denying the McCoys' motion to reinstate the case.

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on March 1, 2001 is affirmed.

Affirmed.