578 S.E.2d 355

**William T. McCOY and Beverly McCoy, Plaintiffs Below, Appellants,**

**v.**

**Scott MILLER, M.D., Jay Requarth, M.D., and John Chapman, M.D. Defendants Below, Appellees.**

No. 30632.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided Feb. 27, 2003.

Roger D. Forman, Forman & Huber, L.C., Charleston, West Virginia, Attorney for the Appellants.

Thomas J. Hurney, Jr., Laurie K. Marshal, Jackson & Kelly PLLC, Charleston, West Virginia, Attorneys for the Appellee, Scott Miller, M.D.

Nancy C. Hill, Larry A. Winter, Winter, Johnson & Hill, PLLC, Charleston, West Virginia, Attorneys for the Appellee, Jay Requarth, M.D.

PER CURIAM:

William and Beverly McCoy appeal from two orders entered by the Circuit Court of Kanawha County on June 25, 2001, dismissing a second medical malpractice action they filed against Appellee Doctors Jay Requarth and John Chapman [1] on grounds of both *res judicata* and statute of limitations and against Dr. Scott Miller solely on statute of limitations grounds. The McCoys also appeal from a January 30, 2002, order refusing to reinstate their legal malpractice action against Steven Miller.[2] In *McCoy v. CAMC, Inc., (McCoy I)*, 210 W.Va. 324, 557 S.E.2d 378 (2001), this Court affirmed both the lower court's dismissal of the McCoys' first medical malpractice cause of action on grounds of failure to prosecute [3] and the trial court's

---

1. Since the filing of this appeal, Appellants agreed to dismiss Dr. Chapman from the underlying cause of action; an order dismissing him was entered with the circuit court on September 25, 2002.

2. By order entered May 15, 2001, counsel voluntarily agreed to dismiss Steven Miller without prejudice, based on Appellants' belief that they could not pursue a legal malpractice action until a final decision was reached by this Court re-

garding the dismissal of the first medical malpractice cause of action. On December 21, 2001, Appellants' current counsel filed a *motion* with Judge Stucky seeking to reinstate the previously dismissed cause of action against Mr. Miller. *But see infra* note 6.

3. In Appellants' petition for appeal, they assert that Judge Berger dismissed their first medical malpractice action "because lawyer Steven Miller failed to properly designate experts and re-

decision not to reinstate the action. Upon our full review of the orders at issue against the record in this case, we find no error and accordingly, affirm.

## I. Factual and Procedural Background

Mr. McCoy underwent double coronary bypass surgery at Charleston Area Medial Center, Inc. ("CAMC") on January 3, 1995. Although the surgery performed by Dr. Requarth, and assisted by Dr. Chapman, was performed without incident, Mr. McCoy's sternum became separated during the recovery period and he alleged that he sustained a staph infection as a result of the surgery required to repair his separated sternum. Based on these alleged acts and the resulting injuries sustained, the McCoys filed their initial medical malpractice complaint against CAMC, Dr. Requarth, and Dr. Chapman on January 3, 1997. In their complaint, the McCoys alleged negligence, failure to warn, and loss of consortium.

The first civil action filed by the McCoys was dismissed by order of Judge Irene Berger on December 20, 2000, for failure to prosecute. In *McCoy I*, this Court upheld both the dismissal order and the subsequent order of Judge Berger denying the McCoys' motion to reinstate their cause of action and to amend their complaint. *See* 210 W.Va. at 331, 557 S.E.2d at 385.

On February 27, 2001, the McCoys filed a second medical malpractice cause of action[4] based on the 1995 heart surgery. In addition to Doctors Requarth and Chapman, the McCoys named Dr. Miller as a defendant, based on his referral of Mr. McCoy for the

bypass surgery. While the underlying allegations of malpractice stemming from the separated sternum incident are the same as those asserted in the first action, the McCoys included an additional allegation in the second malpractice action by averring that the bypass surgery was medically unnecessary. The McCoys contend that they first learned that the bypass surgery was unnecessary following an examination of Mr. McCoy by Dr. Joseph A. Chiota, Jr., on August 22, 2000.[5]

By order entered on June 25, 2001, Judge Stucky dismissed Dr. Miller, who had not been named in the original medical malpractice cause of action filed by the McCoys, on statute of limitation grounds. By separate order on that same date, Judge Stucky dismissed Doctors Requarth and Chapman on grounds of statute of limitations and *res judicata*. Through an order entered on January 30, 2002, Judge Stucky refused to reinstate the McCoys' legal malpractice cause of action filed against Mr. Miller.[6]

## II. Standard of Review

With regard to the two dismissal orders from which the McCoys appeal, this Court has recognized that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 775, 461 S.E.2d 516, 521 (1995). Accordingly, we proceed to review this matter to determine whether the dismissal orders were entered in error.

peatedly failed to comply with the Court's orders."

4. This complaint included a count premised on the destruction of certain medical records, an allegation that was quickly determined to be incorrect. The complaint was amended on April 4, 2001, to remove the allegation of destroyed records and also to remove CAMC as a defendant. For ease of discussion, we refer to the amended complaint filed on April 4, 2001, as the second complaint in the action; it is the pleading to which the orders at issue on appeal relate.

5. In a brief submitted before his dismissal from this action, Dr. Chapman observes that Dr. Chiota began treating Mr. McCoy in 1997 and continues to be his treating physician.

6. Although Appellants originally assigned as error Judge Stucky's decision not to reinstate their legal malpractice cause of action against Mr. Miller, it appears, both from the brief filed with this Court and from counsel's oral argument to this Court, that they have abandoned this particular assignment. Appellants indicated in their brief that, following the lodging of their appeal with this Court, they "filed a legal malpractice case in the United States District Court against Steven C. Miller and dismissed same because he has no malpractice insurance and is bankrupt with tax liens and no assets." Accordingly, we do not address the trial court's denial of the reinstatement motion.

## III. Discussion

### A. Dismissal on Statute of Limitations Grounds

Appellants argue that the application of the discovery rule, as it relates to a medical malpractice case, requires reversal of the dismissal orders that were entered on statute of limitations grounds. As support for this contention, Appellants maintain that this Court's decisions in *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), and *Bradshaw v. Soulsby*, 210 W.Va. 682, 558 S.E.2d 681 (2001), have broadened the application of the "discovery rule."

■ In syllabus point one of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992), this Court held that "[g]enerally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." With regard to when the "discovery rule" could be utilized, we stated in *Cart* that "the 'discovery rule' applie[d] only when there [wa]s a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury." *Id.* at 242, 423 S.E.2d at 645, syl. pt. 3, in part.

■ In *Gaither*, this Court modified its former position that application of the "discovery rule" was triggered by the acts of a defendant to conceal the discovery of a medical wrong. Rejecting that narrow application of the "discovery rule," we held that

> In tort actions, unless there is a clear statutory prohibition to its application, un-

der the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, 199 W.Va. at 708, 487 S.E.2d at 903. Recently, in *Bradshaw*, we overruled a prior ruling which held that the "discovery rule" was inapplicable in wrongful death actions, and adopted the same requirements we announced in *Gaither* for applying the rule, with certain additional factors relevant to wrongful death actions. *See* Syl. Pts. 7, 8, 210 W.Va. at 684, 558 S.E.2d at 683.[7]

■ Based on the holdings in *Gaither* and *Bradshaw*, Appellants contend that the "discovery rule" is triggered by a prospective plaintiff's "recognition that the treatment received by the patient caused his injury." They suggest that because Mr. McCoy had no way of knowing "until it was told to him" that his bypass surgery was unnecessary, the two-year statute of limitations[8] did not start running until Dr. Chiota informed him in August 2001 that the cardiac surgery was not medically necessary.

In making these arguments, Appellants seek to further extend the "discovery rule" beyond the parameters of the previously broadened reach of that rule. In *Gaither*, we expanded the "discovery rule" by linking the running of the limitations period with the prospective plaintiff's knowledge, or duty to gain such knowledge, of "the identity of the entity who owed the plaintiff a duty to act

---

**7.** We held in syllabus point seven of *Bradshaw* that "[t]he discovery rule, as set forth in *Gaither v. City Hospital*, 199 W.Va. 706, 487 S.E.2d 901 (1997), applies to actions arising under the wrongful death act. To the extent that *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991) conflicts with this holding, it is overruled." 210 W.Va. at 684, 558 S.E.2d at 683. In syllabus point eight, we set forth the following rule for applying the "discovery rule" to wrongful death actions:

> In a wrongful death action, under the discovery rule, the statute of limitation contained in *W.Va.Code*, 55–7–6(d) [1992] begins to run when the decedent's representative knows or

by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.

*Bradshaw*, 210 W.Va. at 684, 558 S.E.2d at 683.

**8.** *See* W.Va.Code § 55–7B–4 (1986) (Repl.Vol. 2000).

with due care" and the fact that such entity may have breached that duty of care, which in turn caused the plaintiff's injury. 199 W.Va. at 708, 487 S.E.2d at 903, syl. pt. 4, in part. Critically, however, we did not eliminate the affirmative duty the law imposes on a plaintiff to discover or make inquiry to discern additional facts about his injury when placed on notice of the possibility of wrongdoing. The crux of the "discovery rule" has always been to benefit those individuals who were either unaware of their injuries or prevented from discovering them. *See Cart*, 188 W.Va. at 244–45, 423 S.E.2d at 647–48; *Gaither*, 199 W.Va. at 713, 487 S.E.2d at 908 (recognizing that "discovery rule has its origins in the fact that many times an injured party is unable to know of the existence of any injury or its cause"). When this Court augmented the application of the "discovery rule" to cases beyond those where the defendant actively sought to prevent the discovery of the malfeasance, we did not eradicate the rule's additional objective of benefitting those individuals who were unaware of their injuries due to no fault of their own.

■ The countervailing consideration of whether the prospective plaintiff "knew or should have known" through the exercise of reasonable diligence of his injury has always been closely intertwined with the "discovery rule." *See Harrison v. Seltzer*, 165 W.Va. 366, 371, 268 S.E.2d 312, 314 (1980) (stating that inquiry is "whether the injured plaintiff was aware of the malpractice or, by the exercise of reasonable care, should have discovered it"); Syl. Pt. 2, *Hill v. Clarke*, 161 W.Va. 258, 241 S.E.2d 572 (1978) (holding that "statute of limitations for malpractice begins to run when plaintiff knows or has reason to know of the alleged malpractice"). This critical element of the "discovery rule" has not been vitiated with the Court's modification of the rule's application. Where a

plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach. *See Harrison v. Davis*, 197 W.Va. 651, 478 S.E.2d 104 (1996) (holding that plaintiff mother's failure to exercise reasonable diligence in discovering injuries associated with the birth and wrongful death of her daughter precluded tolling of statute of limitations by "discovery rule").

In this case, had the most basic and routine of inquiries been made during the discovery phase of the first action, it is likely that Dr. Chiota's "eleventh hour" opinion of unnecessary surgery could have surfaced at a much earlier point in the litigation's protracted history.[9] Because Appellants timely retained counsel and timely brought suit in connection with the sternum separation incident, this Court cannot turn a blind eye to the fact that additional inquiry on the part of their trial counsel [10] could have easily uncovered the "unnecessary surgery" allegation at an earlier date, thereby allowing Appellants the opportunity to seek amendment of their complaint to add such an allegation in a timely fashion.

The facts underlying the malpractice at the center of this case were straightforward. There were no concealed or hidden injuries. As Judge Stucky opined in his order of June 25, 2001, "[t]here is no allegation in this case of fraudulent concealment or any action by Dr. Miller to prevent plaintiff from knowing the cause of his injury or bringing this action." Similarly, in a second order of that same date, Judge Stucky found that "[t]here is no act on the part of either Dr. Chapman or Dr. Requarth which concealed any of their actions relative to plaintiffs nor is there any act by either Dr. Chapman or Dr. Requarth

---

**9.** While Dr. Requarth suggests that the timing of Dr. Chiota's determination that the bypass surgery was allegedly unnecessary is suspect due to its coincidence with Judge Berger's consideration of the defendant doctors' motions to dismiss in mid-August 2001, we do not place any reliance on this supposition in reaching our decision in this case.

**10.** We note that Appellants' current counsel did not serve as trial counsel below. We do not ascribe any acts of malfeasance to Mr. Foreman; to the contrary, we wish to acknowledge that Mr. Foreman has represented his clients in an exceptional manner. Unfortunately for Appellants, the harm committed by trial counsel below is not of the nature that permits this Court to remedy the error through this appeal.

which prevented plaintiffs from knowing of their injuries and damages[.]"

This case falls into that category of cases we discussed in *Gaither* where "an injury or wrong occurs of such a character that a plaintiff cannot reasonably claim ignorance of the existence of a cause of action." 199 W.Va. at 712, 487 S.E.2d at 907. In such cases, as we explained in *Gaither*, "the burden shifts to the plaintiff to prove entitlement to the benefit of the discovery rule." *Id.* at 712, 487 S.E.2d at 907. The McCoys knew as soon as they were informed following bypass surgery of the need to reattach the sternum that Mr. McCoy had suffered injury from certain acts of improper handling. They promptly sought counsel and brought suit within the two-year filing period. *See supra* note 8. Appellants have failed to provide this Court with any explanation as to why they could not have discovered at an earlier point in time the facts underlying their allegation that the bypass surgery was medically unnecessary.

■ Unlike *Gaither* where the plaintiff reasonably believed his leg amputation resulted from his own negligent acts in riding a motorcycle, Appellants knew immediately that the sternum separation Mr. McCoy sustained was caused by actions of parties other than Mr. McCoy. *Gaither* does not go so far as to suggest that until a prospective plaintiff is informed of every possible act of malpractice and the identity of every potential wrongdoer, the statute of limitations is tolled. To the contrary, *Gaither* only tolls the limitations period until the plaintiff in factually specific situations, such as where the plaintiff has no reason to know or learn of an act of malpractice, is placed on notice of a possible wrongdoing. This Court has always been

clear, as we restated in *Gaither*, that "[m]ere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations[.]" 199 W.Va. at 712, 487 S.E.2d at 907 (quoting Syl. Pt. 3, in part, *Cart*, 188 W.Va. at 242, 423 S.E.2d at 645). As we explained in *Gaither*, "[t]his rule was crafted because in some circumstances causal relationships are so well established that we cannot excuse a plaintiff who pleads ignorance." 199 W.Va. at 712, 487 S.E.2d at 907.

■ In those instances where the " 'patient is immediately aware that something went wrong,' " the statute of limitations begins to run upon the plaintiff's awareness of " 'adverse results of medical treatment.' " *Gaither*, 199 W.Va. at 712, 487 S.E.2d at 907 (quoting *Seltzer*, 165 W.Va. at 371, 268 S.E.2d at 315). In such cases, as we observed in *Gaither*, the statute of limitations starts running with the plaintiff's knowledge of the fact that something went wrong and *not* his awareness of " 'the precise act of malpractice.' " 199 W.Va. at 712, 487 S.E.2d at 907 (quoting *Seltzer*, 165 W.Va. at 371, 268 S.E.2d at 315). The facts of the instant case paradigmatically fall into the category of cases discussed in *Seltzer* where the plaintiff knows instantly that something went wrong. *See* 165 W.Va. at 371–72, 268 S.E.2d at 315.

Armed with information about the wrongdoing stemming from Mr. McCoy's bypass surgery, Appellants were then required to make reasonable and diligent inquiry into all relevant issues related to the malpractice.[11] Whether or not the original bypass surgery should have been performed was clearly an issue related to the resulting malpractice claim.[12] Any physician with training in car-

11. *See Gaither*, 199 W.Va. at 712, n. 6, 487 S.E.2d at 907, n. 6 (observing how certain medical injuries are serious enough that "a reasonable plaintiff would have investigated whether her injuries were the result of medical negligence"); *see also United States v. Kubrick*, 444 U.S. 111, 112, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (holding under the Federal Tort Claims Act that plaintiff "armed with the facts about the harm done to him" is obligated to "protect himself by seeking advice in the medical and legal community, and to excuse him from promptly doing so by postponing the accrual of his claim

would undermine the purpose of the limitations statute").

12. Assuming no additional facts that would have either placed Appellants on notice of malpractice or reasonably required them to undertake efforts to discover such malpractice, we would not take issue with application of the "discovery rule" to this case if the only alleged act of malpractice was the unnecessary surgery allegation. Under such a scenario, the information provided by Dr. Chiota would be the first indication Appellants had of possible wrongdoing, and accordingly, the

diology could have reviewed Mr. McCoy's records to ascertain whether the bypass surgery was required. In failing to make such inquiries within a reasonable period of time sufficient to have permitted a timely amendment of Appellants' complaint, we are forced to conclude that the McCoys did not meet their burden of proving entitlement to the "discovery rule." *See Gaither,* 199 W.Va. at 712, 487 S.E.2d at 907. The facts of this case simply do not permit this Court to rule otherwise.

In *Gaither,* this Court noted that "[i]n the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." 199 W.Va. at 714–15, 487 S.E.2d at 909–10. While many cases will require a jury to resolve the issue of when a plaintiff discovered his or her injury, including the related issue of whether the plaintiff was reasonably diligent in discovery his or her injury, the issue can also be resolved by the court where the relevant facts are undisputed and only one conclusion may be drawn from those facts. *See Harrison,* 197 W.Va. at 660, 478 S.E.2d at 113 (upholding trial court's decision that plaintiff failed to exercise reasonable diligence in discovering injuries); *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 719 (7th Cir.1994); *Witherell v. Weimer,* 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981). Because Mr. McCoy was immediately aware of his sternum injury and resulting infection, the question of whether Appellants acted with reasonable diligence to discover the related allegation that the bypass surgery was unnecessary, under the facts of this case, was properly a legal question for the trial court to resolve.

### III. Conclusion

Having found no error with regard to the dismissal orders at issue, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

statute of limitations would be tolled until such date.