# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Donna Parsons and Gary Parsons,**
**Plaintiffs Below, Petitioners**

**vs) No. 16-1178** (Kanawha County 15-C-2094)

**Herbert J. Thomas Memorial Hospital**
**Association and Betty A. Goad, M.D.,**
**Defendants Below, Respondents**

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Donna Parsons and Gary Parsons, by counsel Robert P. Welch, appeal the Circuit Court of Kanawha County's May 12, 2016, order granting respondents' "Motion to Dismiss/Motion for Summary Judgment" in petitioner's medical malpractice lawsuit. Petitioners also appeal the November 15, 2016, order denying their Rule 59(e) motion to alter or amend the May 12, 2016, order. Respondent Herbert J. Thomas Memorial Hospital Association (the "Hospital") filed a response in support of the circuit court's order by counsel Robby J. Aliff and Candice M. Harlow. Respondent Dr. Betty A. Goad ("Dr. Goad") also filed a response in support of the circuit court's order by counsel Don R. Sensabaugh, Jr. and J. Dustin Dillard.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 26, 2013, Dr. Goad performed a hysterectomy on Petitioner Donna Parsons ("Mrs. Parsons") at the Hospital. During a July 2, 2013, follow-up visit with Dr. Goad, Mrs. Parsons reported drainage from the incision site. Dr. Goad diagnosed a periumbilical infection and prescribed antibiotics. Thereafter, Mrs. Parsons presented to Dr. Bernard Luby for evaluation of abdominal pain and drainage; Dr. Luby referred Mrs. Parsons to Dr. Matthew Hofeldt.

On July 9, 2013, Dr. Hofeldt diagnosed Mrs. Parsons with a postoperative wound. Following a July 11, 2013, CT scan, Dr. Hofeldt diagnosed Mrs. Parsons with a postoperative wound infection and an enterocutaneous fistula. That same day, Dr. Hofeldt performed an exploratory laparoscopy on Mrs. Parsons, which Dr. Hofeldt converted intraoperatively into a laparotomy during which he identified and repaired damage to Mrs. Parsons's small bowel and colon (together "bowel"). Specifically, Dr. Hofeldt removed infected permanent mesh implants that a different surgeon had surgically placed several years before during a hernia repair surgery. Dr. Hofeldt's operative report provided that, "[i]t appeared that the mesh had eroded into the bowel in at least one or two areas and this was probably the cause of the patient's problems.

1

However, I could not be for sure." Dr. Hofeldt also identified a "hole" during the operation but could not determine whether it was an enterotomy (a surgical cutting open of the intestine), or the fistula itself.

On July 25, 2013, Dr. Goad saw Mrs. Parsons in her office. Petitioners assert that Dr. Goad told Mrs. Parsons that Dr. Hofeldt had to do a partial resection of the bowel for a fistula/abscess because of mesh problems. Petitioners state that, at the time, product liability litigation was ongoing on a national scale against various mesh manufacturers, as illustrated by the number of television advertisements being aired by lawyers in the mesh litigation. Late in July of 2013, petitioners sought legal counsel to determine whether Mrs. Parsons should become involved in the mesh litigation. Petitioners were referred to a law firm on November 27, 2013, where they claim they first discovered that Dr. Goad might have caused the injury to Mrs. Parsons's bowel. That same day, petitioners entered into a contract with the law firm so that Mrs. Parsons's medical records could be obtained and evaluated. In 2015, Dr. Christopher Awtrey evaluated those records and determined that the injury to Mrs. Parsons's bowel was the result of Dr. Goad's medical negligence, and not a result of the mesh implants. Petitioners aver that it was at this point that they became aware that Dr. Goad caused Mrs. Parsons's injuries.

Pursuant to the West Virginia Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-6(b), petitioners served notices of claim on the Hospital upon July 6, 2015, and on Dr. Goad upon July 7, 2015; and timely sent each respondent a screening certificate of merit. The Hospital received petitioners' screening certificate of merit on September 1, 2015; Dr. Goad received petitioners' screening certificate of merit on September 2, 2015.

Petitioners filed the instant medical malpractice action against respondents on November 24, 2015. The Hospital and Dr. Goad each responded by filing a "Motion To Dismiss/Motion For Summary Judgment." Those motions asserted that petitioners' complaint was barred by the MPLA's two-year statute of limitations set forth in West Virginia Code § 55-7B-4.

Following an April 15, 2016, hearing, the circuit court granted respondents' motions by order entered May 12, 2016. In that order, the circuit court made the following findings:

> Since it is undisputed that the post-operative infection and fistula [the injuries alleged in petitioners' complaint] had been diagnosed by July 11, 2013 (between two and three weeks after the surgery at issue), the [c]ourt finds that July 11, 2013, is the latest date the Statute of Limitations would have begun to run.

> Utilizing July 11, 2013 as the start of the Statute of Limitations, the court finds [petitioners] timely mailed a Notice of Claim to each defendant.

> By mailing those notices of claim, the Statute of Limitations was tolled pursuant to [West Virginia] Code §55-7B-6(h).

> [West Virginia] Code §55-7B-6(h) states that the Statute of Limitations "shall be tolled from the date of mail of a notice of claim to thirty days following

2

receipt of a response to the notice of claim [or] thirty days from the date a response to the notice of claim would be due . . . whichever last occurs."

On September 1, 2015, [Respondent] Hospital received a Screening Certificate of Merit . . . . Therefore, the tolling period ended as it relates to [Respondent] Hospital on October 31, 2015.

On September 2, 2015, [Respondent] Dr. Goad received a Screening Certificate of Merit . . . .  Therefore, the tolling period ended as it relates to [Respondent] Dr. Goad on November 1, 2015. *See* [West Virginia] Code §55-7B-6(h).

Based on these findings, the circuit court concluded that the "the Statute of Limitations elapsed prior to [petitioners] filing their lawsuit on November 24, 2015, and that their lawsuit was, therefore, time barred."

On May 19, 2016, petitioners filed a motion to alter or amend the May 12, 2016, order pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. Respondents filed a joint response. Following a hearing, the circuit court, by order entered November 16, 2016, denied petitioners' Rule 59(e) motion citing Syllabus Point 2 of *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W.Va. 48, 717 S.E.2d 235 (2011). The circuit court also found that petitioners' initial belief—that Mrs. Parsons's injury may have been caused by previously implanted mesh—does not save their claim under *McCoy v. Miller*, 213 W.Va. 161, 166, 578 S.E.2d 355, 360 (2003).

Petitioners now appeal the circuit court's May 12, 2016, and November 15, 2016, orders. Petitioners raise three assignments of error on appeal. Petitioners first argue that the circuit court erred in failing to notify the parties it was treating each respondent's "Motion to Dismiss/Motion for Summary Judgment" as a motion for summary judgment.

We find no merit to petitioners' argument. Petitioners were on notice that respondents were asking the circuit court to rule on a motion for summary judgment. First, each respondent's motion was clearly entitled as a "Motion to Dismiss/*Motion for Summary Judgment*" (emphasis added). Moreover, both respondents asked the court to consider matters and documents outside the pleadings, by attaching multiple exhibits to their motions. *See* Syl. Pt. 4, *U.S. Fed & Guar. Co. v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965) (providing "if matters outside the pleadings are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith"). Moreover, Dr. Goad, in her brief to the circuit court, specifically sought summary judgment by directly asking the circuit court to consider matters outside the pleadings and by arguing that the case "raised no genuine issues of material facts."

Additionally, petitioners' response to Dr. Goad's motions was entitled "PLAINTIFFS' RESPONSE TO DEFENDANT, BETTY A. GOAD, M.D.'S MOTION TO DISMISS[/] MOTION FOR SUMMARY JUDGMENT" (capitalization and underscore in the original). Thus, petitioners were not only aware that respondents were seeking summary judgment, they underscored the words "motion for summary judgment" on the cover page of their responsive

pleading. Moreover, petitioners attached various exhibits to their response. Those exhibits included (1) Dr. Awtrey's curriculum vitae; (2) Dr. Matthew J. Hofeldt, M.D.'s operative report for Mrs. Parsons; and (3) Dr. Goad's "office reports" for Mrs. Parsons. Consequently, petitioners set forth considerable material outside the pleadings for the circuit court's consideration. Nothing prohibited petitioners from including with their response any other additional information they wanted the court to consider, given that the parties were clearly aware that the circuit court might grant summary judgment in respondents'' favor. Therefore, we reject petitioners' assertion that the circuit court erred in failing to notify the parties it was treating the respondents' motions as a motion for summary judgment or in failing to give petitioners the opportunity to present material pertinent to such a motion.

Accordingly, we find that the circuit court granted summary judgment in favor of respondents, and not a motion to dismiss. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755, 756 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.* at Syl. Pt. 2 (citations omitted).

Petitioners next argue that the circuit court erred in interjecting itself into the province of the jury and in determining that their complaint was time barred. Petitioners highlight that during Mrs. Parsons's surgery, Dr. Hofeldt could not tell whether the hole in Mrs. Parsons's bowel occurred during the hysterectomy or developed because of her mesh implants. Thereafter, on July 25, 2013, Dr. Goad told Mrs. Parsons that Dr. Hofeldt had to do surgery due to a fistula abscess caused by mesh problems. Given this information, petitioners claim they reasonably believed that Mrs. Parsons's second surgery was the result of defective mesh implants. Petitioners argue that they did not discover that Dr. Goad's medical negligence caused Mrs. Parsons's postoperative problems until their expert, Dr. Awtrey, evaluated Mrs. Parsons's medical records. Dr. Awtrey notified petitioners' counsel of that opinion on July 29, 2015. Petitioners direct the Court to *Gaither v. City Hospital, Inc.*, in which we found that "[t]he law does not and should not require a patient to assume that his medical provider has committed malpractice, or worse, has engaged in a conspiracy to conceal some misconduct every time medical treatment has less than perfect results." 199 W.Va. 706, 715, 487 S.E.2d 901, 910 (1997).

However, we find that the circuit court based its ruling that petitioners' claim was time-barred upon undisputed facts including that: (1) Mrs. Parsons did not have a fistula or infection prior to June 26, 2013; (2) Dr. Goad performed Mrs. Parsons's hysterectomy at the Hospital on June 26, 2013; (3) Dr. Hofeldt diagnosed and treated Mrs. Parsons for a fistula and infection on July 11, 2013; and (4) petitioners sought legal counsel for these injuries in late July of 2013. Based on these facts, the circuit court concluded that the statute of limitations began to run on July 11, 2013, when petitioners became aware of Mrs. Parsons's injuries, and the two-year statute of limitations expired prior to the time petitioners filed suit against respondents on November 24, 2015.

With regard to petitioners' argument that the circuit court invaded the province of the jury, we have said,

4

[w]hile many cases will require a jury to resolve the issue of when a plaintiff discovered his or her injury, including the related issue of whether the plaintiff was reasonably diligent in discovery of his or her injury, the issue can also be resolved by the court where the relevant facts are undisputed and only one conclusion may be drawn from those facts.

*McCoy v. Miller*, 213 W.Va. 161, 167, 578 S.E.2d 355, 361 (2003). Further, in *McCoy*, the Court clarified its holding in *Gaither* as follows:

*Gaither* does not go so far as to suggest that until a prospective plaintiff is informed of every possible act of malpractice and the identity of every potential wrongdoer, the statute of limitations is tolled. To the contrary, *Gaither* only tolls the limitations period until the plaintiff . . . is placed on notice of a possible wrongdoing. This Court has always been clear, as we rested in *Gaither*, that "[m]ere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations. . . .

In those instances where the "patient is immediately aware that something went wrong," the statute of limitations begins to run upon the plaintiff's awareness of "adverse results of medical treatment." In such cases, as we observed in *Gaither*, the statute of limitations starts running with the plaintiff's knowledge of the fact that something went wrong and not his awareness of "the precise act of malpractice."

213 W.Va. at 166, 578 S.E.2d at 360.

Here, petitioners discovered or, by the exercise of reasonable diligence, should have discovered that Mrs. Parsons' injuries may have been caused by Dr. Goad when Dr. Hofeldt diagnosed Mrs. Parsons with a postoperative infection and an enterocutaneous fistula on July 11, 2013. Thus, on July 11, 2013, petitioners learned something went wrong, as proved by the fact that they sought legal counsel later that same month to evaluate potential claims. Per *Gaither* and *McCoy*, they were not required to know the exact nature of their claims at the time they sought counsel. Nevertheless, petitioners failed to file this action until November 24, 2015, well outside the two-year statute of limitations set forth in West Virginia Code § 55-7B-4. Accordingly, we find that the circuit court did not err in the manner in which it applied the statute of limitations in this case, and therefore find that it did not err in granting summary judgment to respondents.

Petitioners' second assignment of error is that the circuit court erred in finding that petitioners' Rule 59(e) motion was an attempt to present new evidence and arguments. Petitioners maintain that a review of the transcripts of the hearing on respondents' motions to dismiss/motions for summary judgment, and the hearing on petitioners' Rule 59(e) motion, reveals that petitioners presented no new evidence or arguments at the Rule 59(e) hearing. Petitioners assert that the only material proffered by petitioners at the Rule 59(e) hearing were the affidavits of petitioners and their medical expert, the substance of which were all argued by petitioners' counsel at the first hearing.

Respondents counter that, in petitioners' response to Dr. Goad's motion to dismiss/motion for summary judgment, petitioners argued that the discovery rule was incorrectly premised on July 11, 2013, the date Dr. Hopfeldt operated on Mrs. Parsons; that they made good faith efforts to comply with the MPLA; that exigent circumstances led petitioners to miss the deadline; and that respondents were not demonstrably prejudiced by the delay. Thereafter, as this litigation proceeded, petitioners offered various dates for when the statute of limitation began to run. For example, at the April 15, 2016, hearing on respondents' motions to dismiss/motions for summary judgment, petitioners first suggested that the statute of limitations began to run on October 25, 2013, when Dr. Goad noted in Mrs. Parsons's medical record that the injury may have been caused by medical malpractice. In their Rule 59(e) motion, petitioners first argued that the statute of limitations did not begin to run until November 27, 2013, when they first met with their attorney. Finally, petitioners first argued at the hearing on their Rule 59(e) motion that the discovery date was July 29, 2015, when their Dr. Awtrey communicated his findings to petitioners' law firm.

In Syllabus Point 2 of *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W.Va. 48, 717 S.E.2d 235 (2011), we said,

> [a] motion under Rule 59(e) of the West Virginia Rules of Civil Procedure should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

Applying the *Mey* factors to the instant case, the circuit court found as follows: Here, there was no intervening change in the controlling law; petitioners' motion was not necessary to remedy a clear error of law; and the court found that "there exists no obvious injustice here" in light of *Gaither* and *McCoy*. However, with regard to the second prong of the *Mey* test, "new evidence not previously available comes to light," the court found that petitioners were simply rearguing their discovery rule claim using new legal arguments, factual contentions, and evidence in the form of affidavits, all of which petitioners could have raised previously.

"Under Rule 59(e), the reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* at 57, 717 S.E.2d at 244. Moreover, "[a] motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued." *Id. at* 56, 717 S.E.2d at 243. Upon our review of the record on appeal, we concur with the circuit court's finding that petitioners' Rule 59(e) motion was merely an attempt to present new evidence and arguments. Thus, we find that the circuit court did not err in denying petitioners' Rule 59(e) motion on that ground.

In petitioners' third and final assignment of error, they argue that the circuit court erred in finding, as a matter of law, that "there exists no obvious injustice" in this case that would support their Rule 59(e) motion. Specifically, petitioners claim that the circuit court discounted the sworn affidavits of Mrs. Parsons's medical providers that led petitioners to believe they were the victims of defective and/or improperly designed medical mesh. As a result, petitioners contend that the circuit court unjustly deprived them of the opportunity to have their case decided by a jury of their peers. We disagree. Here, the circuit court applied the *Mey* "obvious injustice"

6

factor and found "there exists no obvious injustice here." We concur for the reasons stated above and, consequently, find no error.

Accordingly, for the foregoing reasons, we affirm the May 12, 2016, order granting respondents' motion for summary judgment, and the November 15, 2016, order denying petitioners' Rule 59(e) motion to alter or amend judgment.

Affirmed.

**ISSUED:** November 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis