JOSEPH S. SOTO, TAX COMMISSIONER

V.

HOPE NATURAL GAS COMPANY

(CC 832)

Submitted September 25, 1956. Decided December 18, 1956.

*John G. Fox,* Attorney General, *Robert E. Magnuson,* Assistant Attorney General, for plaintiff.

*Jackson, Kelley, Holt & O'Farrell, Homer A. Holt, James F. Brown,* for defendant.

BROWNING, PRESIDENT:

The Tax Commissioner of the State of West Virginia instituted this motion for judgment proceeding against the Hope Natural Gas Company, hereinafter referred to as Hope, for the sum of $155,879.92, allegedly due as Business and Occupation Taxes under Chapter 11, Article 13, Sections 2a, 3a and 3b of the Code, hereinafter referred to as §2a, as amended by Chapter 33, Acts of the Legislature, Extraordinary Session, 1933; Chapter 86, Acts of the Legislature, 1935; Chapter 108, Acts of the Legislature, Regular Session, 1937; Chapter 120, Acts of the Legislature, Regular Session, 1939; Chapter 95, Acts of the Legislature, Regular Session, 1943; and, subsequent to the institution of this proceeding, by Chapters 165 and 166, Acts of the Legislature, 1955. The notice alleges that: During the year 1953, Hope sold, used and delivered as free gas in its entire system 136,117,767 m.c.f. of natural gas of which it produced in West Virginia 35,-649,721 m.c.f.; of the total amount, 90,012,528 m.c.f. was transported and sold in interstate commerce, and 46,-

105,239 m.c.f. was used by Hope in its own operations, sold in West Virginia to various purchasers, or delivered as free gas to lessors; and that the proportion of natural gas produced in West Virginia and used or sold within the State was 12,074,560 m.c.f. The notice alleges that Hope paid the taxes imposed under §2a upon the entire 35,649,721 m.c.f produced in West Virginia at the rate or value of 20¢ per m.c.f. which is admitted to be the value of such gas, at the well, during 1953, and the Commissioner accepted such taxes as correct in regard to the proportion of such gas sold or transported in interstate commerce, but in respect to the 12,074,560 m.c.f. produced in West Virginia and sold, used or distributed within the State, asserted that such gas had an average value, at the place where delivered to others or used by Hope, of 38.39¢ per m.c.f., and levied a deficiency assessment in the amount sought to be recovered.

Hope demurred to the notice and filed a special plea, to which plea the Commissioner demurred. The court overruled the demurrer of Hope, sustained the demurrer of the Commissioner, and certified the questions arising upon such demurrers to this Court.

The questions so certified, briefly stated are: (1) Is the case of *Hope Natural Gas Co.* v. *Hall, Tax Commissioner, et al.*, 102 W. Va. 272, 135 S. E. 582, 274 U.S. 284, 47 S. Ct. 639, 71 L. Ed. 1049, *res judicata* in so far as Hope is concerned, and *stare decisis* generally that the proper basis for taxation in the instant case is the value of the gas at the well?; (2) Does the proper interpretation of Code, 11-13, as amended, require that the value at the well be made the measure of the tax imposed thereby?; and (3) If the proper measure of the tax be, as contended by the Commissioner, is the statute not then unconstitutional as violative of §1, of the 14th Amendment to the Constitution of the United States, and §1, Article X of the West Virginia Constitution?

The present statute designated "Business and Occupation Tax" was first enacted by the Legislature of this

State at its regular session, 1921, Chapter 110, and termed the "Gross Sales Act", and reenacted in 1925, Chapter 1, First Extraordinary Session, as the "Business and Professional Tax." The 1925 Act was in effect when *Hope* v. *Hall, supra*, was decided by this Court and the Supreme Court of the United States. The provisions of §2a of Article 13, Chapter 11, which is the controlling Section in controversy in this litigation, has not been significantly changed since the Acts of 1925. Section 2 of Article 13, in the first paragraph thereof, provides that: "There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-a to two-j, inclusive, of this article." §2a, which is titled "Production of Coal and Other Natural Resource Products", provides that: "Upon every person engaging or continuing within this State in the business of producing for sale, profit or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, except as otherwise provided, multiplied by the respective rates as follows: Coal, one per cent; limestone or sandstone, quarried or mined, one and one half per cent; oil, three per cent; natural gas, in excess of the value of five thousand dollars, six per cent; blast furnace slag, three per cent; sand, gravel or other mineral product, not quarried or mined, three per cent; timber, one and one-half per cent; other natural resource products, t w o per cent. The measure of this tax is the value of the entire production in this State, regardless of the place of sale or the fact that the delivery may be made to points outside the State."

In *Cole* v. *Pond Fork Oil & Gas Co.*, 127 W. Va. 762, 35 S. E. 2d. 25, this Court, in defining the tax that is levied upon those who extract natural products from the earth, stated that this is not a "production" or "severance" tax. In other words, there is no tax under the provisions of

Chapter 11, or any other Chapter of the Code, that levies the tax upon each ton of coal, each barrel of oil, or each m.c.f. of gas that is "produced". In the opinion, it was said: "* * * We have no production tax. Our Legislature has studiously avoided imposing a production tax, and has resorted to the imposition of a privilege tax, whereby persons, firms and corporations are classified according to the business in which they are engaged, and a tax collected from the gross proceeds of their business, rather than upon any product which they may produce from the earth or manufacture or process. * * *"

With this brief history of the legislation and definition of the tax that it imposes, we come to a discussion of the first certified question. *Hope* v. *Hall, supra,* came to this Court upon an appeal from a decision of the Common Pleas Court of Kanawha County, affirmed by the Circuit Court of that county, finding that the provisions of §2a, "in so far as it purports to impose a tax on the business of mining and producing for sale, profit or use of natural gas, is in every respect null and void as to the plaintiff, its property, franchises and business, and that so much of the said Section 2(a) as applies to the business of mining and producing natural gas is not divisible or severable; * * *", since it was in violation of Article I, Section 8 of the Constitution of the United States. An injunction was granted by the Court of Common Pleas restraining the Tax Commissioner and the Attorney General from enforcing the provisions of §2a. This Court said in the opinion in *Hope* v. *Hall, supra*: "The defendant's main contention is that under the facts developed in this case, the state has the right under Sec. 2a to calculate the tax on the gross proceeds of the sale of the plaintiff's gas, sold without the state. Their brief contends 'there is no tax on the sale or the transportation of the gas or on the proceeds from the sale thereof', but that the gross sales price is simply the taxable measure of the value of the commodity."

After quoting §2a, the Court further stated: "* * * Art. 1, Sec. 8, of the Federal Constitution as interpreted

by Federal decisions, denies to a state the right to impose a direct tax on the gross proceeds of interstate commerce, except as hereinafter noted. A large per cent of the commodities named in the statute is sold in other states. The plaintiff contends that as the Act contains no exception it indicates a plain intention to tax the gross proceeds of sales in interstate commerce. There is a presumption, however, that the Legislature did not intend to violate any provision of the Federal Constitution. * * *. Consequently, we are warranted in presuming that the Legislature did not mean to include, as an element of value, so much of the gross proceeds of the sale of an article in interstate commerce, as is represented by the cost of transportation, and we restrain the operation of the statute accordingly. * * *"

The last paragraph of the opinion states: "We therefore hold, under the facts in this case, that the defendants may not treat the gross proceeds of plaintiff's sales outside the state as the worth of its gas within the state, but that they may enforce the Act upon the value thereof *within the state,* and *before it enters interstate commerce.* The injunction herein will be accordingly so modified."

The decision of this Court in *Hope* v. *Hall* was affirmed by the Supreme Court of the United States in *Hope Natural Gas Company* v. *Hall, Tax Commissioner, et al., supra.* In the opinion by Mr. Justice McReynolds, is this quotation from the final order of this Court: "That the decree of the Circuit Court of Kanawha County, pronounced in this cause on the 25th day of May, 1926, in so far only as it enjoins the defendants from enforcing against the plaintiff the provisions of Sec. 2-a of . . . by imposing a tax upon the natural gas produced by the plaintiff, based upon the value thereof within the State and before it enters interstate commerce, be and the same hereby is modified and corrected so as to permit defendants to impose and enforce against the plaintiff a tax, under said section, upon the natural gas so produced by it, based upon the value thereof within the State and before it enters upon interstate commerce, and that in all

other respects said decree as hereby modified and corrected be and the same hereby is affirmed."

Mr. Justice McReynolds does not use the same language as did this Court in stating at what place the value of the gas may be determined under the provisions of §2a, and still preserve the constitutionality of that Section. In the second headnote, it is stated that the Section "is not unconstitutional as respects gas transported to and sold in other states, since it is construed [by this Court] as requiring the tax to be computed on the value of the gas at the well, before it enters interstate commerce, which is valid." The opinion further stated that: "Counsel admit that without violating the commerce clause the State may lay a privilege or occupation tax upon producers of natural gas reckoned according to the value of that commodity at the well. * * *" It further stated that the plain result of the opinion and final decree of this Court "is to require that the tax be computed upon the value of the gas at the well, and not otherwise." In answer to the contention that equal protection of the law had been denied, and that an unlawful tax had been imposed upon the gross proceeds from sales, regardless of their place, he further stated: "* * * The true meaning of the statute and the thing actually taxed oppose the first assertion. * * *"

It is difficult to escape the conclusion that the Supreme Court of the United States interpreted the language used by this Court "upon the value thereof within the State and before it enters upon interstate commerce,", as meaning "the value of the gas at the well, and not otherwise." In that regard, it must also be noted that the Supreme Court of the United States had held in the *Pipe Line* cases, *Eureka Pipe Line Co.* v. *Hallanan*, 87 W. Va. 396, 105 S. E. 506, 257 U.S. 265, 66 L.Ed. 227; and *United Fuel Gas Co.* v. *Hallanan*, 87 W. Va. 396, 105 S. E. 506, 257 U.S. 277, 66 L.Ed. 234, that: "* * * the transmission of this stream of oil was interstate commerce from the beginning of the flow, * * *.", or, in other words, moving in interstate commerce from the time it left the well.

Furthermore, the primary question, at least, which the Supreme Court of the United States was considering and toward which its language was directed, was the decision of this Court prohibiting Hall, the Tax Commissioner, et al., from collecting a tax under the provisions of §2a, based upon the gross proceeds of Hope's sales outside the State as the value of its gas within the State. We conclude that neither the decision of this Court, nor the decision of the Supreme Court of the United States, in *Hope* v. *Hall, is res judicata,* nor *stare decisis,* for the reason that the precise question there determined is not here presented. *Hudson* v. *Iguano Land Co.,* 71 W. Va. 402, 76 S. E. 797; *Hairston* v. *Hairston,* 117 Va. 207, 84 S. E. 15. However, we consider the decision by the Supreme Court of the United States in *Hope* v. *Hall,* in view of the language used in the headnote, and in the opinion written for the court by Mr. Justice McReynolds, as strongly persuasive. The issue adjudicated in *Hope* v. *Hall* in this Court, and in the Supreme Court of the United States, was confined to the validity of measuring the tax under §2a by the gross proceeds derived by the producer from the sale of gas produced in this State and sold in other states. We answer the first certified question in the negative.

After the final decision in *Hope* v. *Hall,* the Tax Commissioner, who was one of the defendants in that suit, and his successors for approximately a quarter of a century thereafter, fixed the tax upon those engaged in the business of producing natural gas upon the value of that commodity at the mouth of the well. This application of the statute applied to those who were in the business of producing gas whether the gas was sold in interstate or intrastate commerce.

On December 23, 1953, the Tax Commissioner promulgated a rule, directed to all producers of natural gas in West Virginia, by which thereafter the measure of the tax upon gas produced would be "the value of the natural gas produced and sold in West Virginia, as shown by the gross proceeds derived from the bona fide sale thereof

in West Virginia by the producer." The rule stated that the measure of the tax on gas sold in interstate commerce would continue to be the value at the "place of production". The Commissioner has authority, under the provisions of Article 13, to make valid rules and regulations for implementing the provisions thereof. By this action, the Commissioner reviewing the statute, and the decisions in *Hope* v. *Hall,* obviously decided that his predecessor had won a greater victory than he realized in *Hope* v. *Hall.* The present litigation arose as the result of the promulgation of this rule.

As heretofore stated, §2a is not a tax on "production" in the sense that this term may be used synonymously with the word "severance", whereby the measure of the tax is based upon the quantity of the natural products removed or severed from the land, regardless of the proceeds derived from their sale or use. Nevertheless, it is a tax upon the business of "producing" for sale, profit, or commercial use, any natural resource product.

The pertinent and, it might be said, vital words contained in §2a are "the articles produced as shown by the gross proceeds derived from the sale thereof by the producers, * * *." The plaintiff contends that there is no ambiguity in the language used in §2a, and he is supported in this position by the ruling of the trial court upon the second question certified to this Court, as revealed by his written opinion which is made a part of the record herein. If that be true, then this Court must apply the statute as written, and not resort to the rules of construction. *Appalachian Electric Power Co.* v. *Koontz, Tax Commissioner,* 138 W. Va. 84, 76 S. E. 2d. 863.

In considering this question, it must be observed that the pertinent language contained in §2a, when this proceeding was instituted, is identical with the language contained therein when *Hope* v. *Hall* was decided by this Court and the Supreme Court of the United States. That a serious ambiguity was contained in this Section at the time *Hope* v. *Hall* was decided is evident. In the opinion, the Court said: "* * * In fact it has been declared our

duty to 'restrain the operation of a statute within narrower limits than its words import', when satisfied that a literal interpretation will include cases not intended by the Legislature. *Ry. Co.* v. *Conley,* 67 W. Va. 129 (pt. 28 syl.). Consequently, we are warranted in presuming that the Legislature did not mean to include, as an element of value, so much of the gross proceeds of the sale of an article in interstate commerce, as is represented by the cost of transporation, and we restrain the operation of the statute accordingly.* * *"

While it was held in *Hope* v. *Hall,* by resorting to the extreme rule of construction which is justified, whenever possible, to preserve the constitutionality of a legislative Act, that the measure of the tax, in so far as it concerns interstate gas, cannot be based upon the gross proceeds derived from the sale thereof outside the State, it was not decided in that case that the pertinent words of §2a gave authority to the Tax Commissioner to measure the tax therein provided upon the gross proceeds derived from a sale of gas at a place in West Virginia far removed from the well where the same "cost of transportation" was added to the value, as it is in gas sold outside this State. The question arises as to whether the construction of §2a in *Hope* v. *Hall* clarified the pertinent provisions thereof, or placed the entire Section in ominous danger of total invalidity when we attempt to ascertain the intention of the Legislature by the language it used therein. Of course, the Legislature of this State may enact taxing legislation pertaining to the business of producing natural products, and the intrastate transportation thereof, as long as such Act is not in conflict with the organic law of this State, or the Constitution of the United States.

In the *Pipe Line* cases, *supra,* this Court upheld the validity of a tax imposed by Chapter 5, Acts of the Legislature, Extraordinary Session, 1919, upon the business of gathering, collecting and transporting oil and gas in pipe lines within this State, although some of the gas was sold later in interstate commerce. When the Supreme

Court of the United States reversed the decision of this Court and held that the gas which was not sold in this State, but in other jurisdictions, was moving in interstate commerce from the time it left the wells, and not subject to taxation by this State, the entire Act was held invalid by this Court upon a finding that it was not the intention of the Legislature to levy a tax solely upon the intrastate oil and gas.

This Court is asked in the present proceeding to find that, by the language used in §2a, it was the intention of the Legislature to measure the tax upon gas by the gross proceeds derived from the sale thereof by the producers in West Virginia at a place other than the well, but that it did not intend to use the same measure of value upon gas sold outside the State. The last sentence of §2a, which will here be repeated, would indicate otherwise: "The measure of this tax is the value of the entire *production* in this State, regardless of the place of sale or the fact that the delivery may be made to points outside the State." (Italics supplied.) However, we do not reach the question that has just been posed, as will be noted hereinafter.

By his demurrer to the special plea of the defendant, the plaintiff admits that, while there are 750 to 800 producers of gas in this State, only about 30 of such producers do not sell their gas at the well. However, as to the volume of gas produced, only about 30% is sold at the well. The defendant falls within that small group of persons, firms, or corporations who engage both in the activity of producing gas and in the gathering, transporting and selling at both wholesale and retail places other than the well, and in using the gas which it produces and transports for the manufacture of other products. Some of this gas the defendant "produces itself", and some is bought from other producers at the well mouth or elsewhere. The proportion of these transactions, as to volume, is stated in the beginning of this opinion. One of the principal activities of the defendant is the selling of gas to consumers, much of it in cities and

towns far removed from the place where it "produces" gas from its own wells.

The rule adopted by the plaintiff's immediate predecessor requires the defendant to pay a tax on 38.39¢ per m.c.f. for the gas which it produces and transports to the cities and towns of the State where it has secured the exclusive privilege of selling gas to consumers from the Public Service Commission. Inasmuch as the Commissioner fixes the measure of the tax as being "the gross proceeds derived from the sale thereof by the producers", the large majority of the producers sell at the well and pay a tax on 20¢ for each m.c.f. thereof. Likewise, the defendant pays only on 20¢ for each m.c.f. of gas that it sells at the well mouth. In order to realize a price upon its gas which merits the fixing of the rate on 38.39¢ per m.c.f., the defendant, and others similarly situated, must maintain an intricate and valuable system of transportation by way of pipe lines, compressor stations, etc., in order to transport the gas to the place where it will bring the higher price that justifies, in the plaintiff's opinion, the higher tax. In the construction of statutes, it is the general rule that the whole body of an Act must be examined with a view of determining the true intention of the Legislature in enacting each part thereof.

The first paragraph of Section 2, heretofore quoted, clearly expresses the purpose of the Business and Occupation Tax which comprises Article 13 of Chapter 11, Section 2a to Section 2j, inclusive. §2a imposes a tax upon every person engaged in the business of "producing" for sale, profit, or commercial use, any natural resource product, and the measure of the tax is the gross proceeds derived from the sale thereof by the "producers". The measure of the tax is "the value of the entire production in this State." Section 2d is titled "Public Service or Utility Business". The defendant is a public service company, engaged in the business of furnishing gas to consumers in many cities, towns and communities of this State. That Section requires the defendant to pay "three per cent on the gross income, said gross income for this purpose

to be determined by deducting from gross income from all sales of gas to consumers, the amount of the tax paid by the taxpayer under section two-a of this article on the *production* of the same gas; * * *." (Italics supplied.)

In addition to the tax on producing gas, which all producers pay, the tax upon its business as a public utility, and the other taxes which it may be required to pay by the provisions of Chapter 11, the plaintiff contends that an additional tax has been imposed upon the defendant by the language used in §2a, that is a tax upon the value of its gas, as evidenced by the gross proceeds derived from the sale thereof at places in this State far removed from the wells where it "produces" its gas. This we are asked to do, although this Court held in *Hope* v. *Hall* that by the same language the Legislature did not intend to measure the value of natural gas by the gross proceeds derived from the sale thereof outside of this State. Paradoxically, if the defendant purchases gas from another person, firm, or corporation, engaged in the public utility business of supplying gas to consumers at places remote from the well, transports that gas through its pipe line system, and sells it at a point in this State for the same amount that it sells the gas it produces, then the tax upon such gas is calculated upon the value of 20¢ per m.c.f., the same as all "producers" pay. If the defendant supplies the people of the City of Wheeling with gas from its wells in southern West Virginia, it pays a tax thereof on 38.39¢ per m.c.f., whereas, if it also serves gas to the people of Bridgeport, Ohio, a few hundred yards away, it would pay tax under this Section based upon the value of 20¢ per m.c.f., according to the rule of the Commissioner, recently adopted, and the rule laid down in *Hope* v. *Hall*. We find no language in §2a which justifies the conclusion that such was the intention of the Legislature when that Section was enacted.

Under our Constitution, the judicial branch of the government may construe, interpret, and, in a proper case, apply Acts of the Legislature, but it has no authority to enact laws, nor rewrite them under the guise of construing or interpreting such Acts. We find that it was

the intention of the Legislature, by the language used in §2a, to apply the same measure of taxation against the producers of gas who sell their products within the State that is applied to those who sell without the State.

In *Hope* v. *Hall,* this Court held that the measure of the tax on gas sold in interstate commerce was the value of the product "within this State", and the Supreme Court of the United States found that the tax must be "computed upon the value of the gas at the well, and not otherwise." In view of that construction as to gas sold by producers in interstate commerce, we find that it was the intention of the Legislature to impose a tax upon the privilege of "producing" gas, and that the tax upon all gas produced, whether sold in interstate or intrastate commerce, is to be measured by the value at the well, the place where "production" ends.

In answering the second question certified in the affirmative, it becomes unnecessary to consider the third question.

The action of the Circuit Court of Kanawha County, in overruling the demurrer of the defendant to the notice of motion for judgment, and in sustaining the demurrer of the plaintiff to the special plea of the defendant, is reversed and the case is remanded.

*Affirmed in part;*
*reversed in part.*