IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0906

_____

FILED
February 25, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

KIMBERLY A. BAKER,
Plaintiff Below, Petitioner

v.

THE CHEMOURS COMPANY FC, LLC,
A Delaware Limited Liability Company,
SHAWN BUSCH, and KEVIN CRISLIP,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Wood County
The Honorable J.D. Beane, Judge
Civil Action No. 19-C-177

AFFIRMED

_____

Submitted: January 12, 2021
Filed: February 25, 2021

Walt Auvil, Esq.
Kirk Auvil, Esq.
The Employment Law Center, PLLC
Parkersburg, West Virginia
Counsel for Petitioner

Eric W. Iskra, Esq.
Samuel M. Brock, III, Esq.
Ellen J. Vance, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.'   Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)."   Syl. Pt. 1, *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018).

3.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

4.      "Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied.  First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings.  Second, the two actions must involve either the same parties or persons in privity with those same parties.  Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be

i

such that it could have been resolved, had it been presented, in the prior action." Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997).

4. "One of the essentials of *res judicata* is that the issue raised in the second action or suit must be identical with the issue raised and determined in the first action or suit." Syl. Pt. 1, *Soto v. Hope Nat. Gas Co.*, 142 W. Va. 373, 95 S.E.2d 769 (1956).

5. "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*." Syl. Pt. 1, *Sayre's Adm'r v. Harpold*, 33 W. Va. 553, 11 S.E. 16 (1890).

6. "Rule 16(b) of the West Virginia Rules of Civil Procedure [1998] requires active judicial management of a case, and mandates that a trial court 'shall . . . enter a scheduling order' establishing time frames for the joinder of parties, the amendment of pleadings, the completion of discovery, the filing of dispositive motions, and generally guiding the parties toward a prompt, fair and cost-effective resolution of the case.' Syl. Pt.

2, *Caruso v. Pearce*, 223 W.Va. 544, 546, 678 S.E.2d 50, 52 (2009)." Syl. Pt. 1, *State ex rel. Almond v. Rudolph*, 238 W. Va. 289, 794 S.E.2d 10 (2016).

**WOOTON, Justice:**

In the proceedings below, Kimberly A. Baker ("the petitioner"), a long-time employee of The Chemours Company FC, LLC ("Chemours"),[1] filed suit against the company, Shawn Busch, and Kevin Crislip (collectively "the respondents") in the Circuit Court of Wood County, alleging claims of "failure to accommodate – gender discrimination," "hostile work environment – gender discrimination," and retaliation. The complaint was dismissed by the circuit court on the ground that the petitioner's claims were res judicata, as they could have been raised in an earlier lawsuit between the same parties. The petitioner argues that although the claims arose during the pendency of the earlier proceeding, she was foreclosed from raising them because the deadline for amendments to the pleadings had passed. The petitioner also argues that the claims are different from those alleged in the earlier lawsuit and would require different evidence. In contrast, the respondents contend that the petitioner could have, and should have, moved to amend the scheduling order in the earlier proceeding to extend the deadline for amendments, and that the new claims were of a type that could have been litigated in the earlier proceeding.

We have analyzed the facts and the parties' legal arguments under our considerable body of case law, which stretches back more than a century, and upon careful

---

[1] The record indicates that the petitioner began her employment with Chemours on August 7, 1995, and is still employed with the company today.

review of the briefs, oral arguments, and the appendix record, we affirm the judgment of the circuit court.

## I. Facts and Procedural Background

On March 8, 2017, the petitioner filed a complaint in the Circuit Court of Wood County against respondent Chemours ("*Baker I*"), alleging "hostile environment-gender harassment," gender discrimination, and retaliation. These claims were brought pursuant to the West Virginia Human Rights Act, West Virginia Code §§ 5-11-1 to 20 (2018). The petitioner subsequently amended her complaint to dismiss the hostile environment claim, and to add Jay Starcher and respondent Shawn Busch, her supervisors, as parties alleged to have aided and abetted the acts of discrimination and retaliation.

During the pendency of *Baker I*, the court entered a scheduling order that, among other deadlines, established a deadline of September 15, 2017, to amend any pleading. Thereafter, in November, 2017, certain provisions in the scheduling order were amended by agreement of the parties, including the discovery cut-off, which was extended to October 14, 2018, and the trial, which was set to be held on December 4, 2018. Neither at this time nor at any other time did the petitioner seek to extend the deadline for amendment of her complaint, despite the fact that alleged acts of harassment and discrimination were ongoing through 2017, and as late as July, 2018.

On October 5, 2018, two months prior to the scheduled trial date of December 4, 2018, respondents Chemours and Bush, as well as Jay Starcher, filed a motion for summary judgment in *Baker I*. The petitioner filed a response in which she raised new claims of discrimination and harassment which had occurred between 2017 and July, 2018; at least some of these new claims had been developed during the course of discovery, but none were ever added to the lawsuit in an amended complaint.[2] By order entered December 6, 2018, the circuit court granted the respondents' motion for summary judgment, refusing to consider the new claims in making its determination:

> iii. Plaintiff's claims are limited to those stated by her in her Amended Complaint and the court would not consider additional allegations and/or claims which are outside the scope of those raised in Plaintiff's Amended Complaint for purposes of ruling on Defendants' Motion for Summary Judgment.
>
> Conclusion:
>
> iv. A plaintiff's claims are limited to those asserted in the complaint and it is improper for plaintiff to attempt to raise new theories and/or new claims in response to summary judgment.

Significantly, the petitioner did not appeal from the court's judgment, and thus did not challenge the court's refusal to consider the new claims and evidence in the

---

[2] The new claims were also raised in the petitioner's pretrial memorandum, filed October 20, 2018, and in her response to the respondents' motions in limine, filed November 1, 2018.

*Baker I* litigation.[3]  Instead, on July 9, 2019, the petitioner filed the instant action, ("*Baker II*"), against respondents Chemours, Bush, and Crislip, the latter having replaced Jay Starcher as one of the petitioner's supervisors while *Baker I* was pending.[4]  The causes of action asserted in *Baker II* were "failure to accommodate – gender discrimination," "hostile work environment – gender discrimination," and retaliation.  In particular, the petitioner claimed that despite her known physical impairment, the respondents failed to accommodate her by assigning her to light duty, although such duty was available; that the respondents failed to do anything about the taunts and insults from co-workers which the petitioner endured on a daily basis; and that the respondents refused to consider her applications for different jobs within the workplace, instead promoting men with less seniority to those positions.

It is undisputed that all of the claims in *Baker II*, having allegedly occurred throughout 2017 and up through July, 2018, arose prior to the discovery cutoff date in *Baker I*, October 15, 2018. For this reason, the circuit court granted the respondents' motion to dismiss, finding that the claims could have been raised in *Baker I* and were thus res judicata.  This ruling is the basis for the petitioner's appeal.

---

[3] We note that the circuit court relied solely on federal authorities and a few cases from other jurisdictions as support for its ruling, because this Court has never squarely addressed the issue.  We do not have occasion to do so for purposes of this appeal, as more fully discussed *infra*.

[4] As was the case in *Baker I*, respondents Busch and Crislip, the petitioner's supervisors, were alleged to be aiders and abettors.

4

## II. Standard of Review

"'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Barber v. Camden Clark Mem'l Hosp. Corp.,* 240 W. Va. 663, 815 S.E.2d 474 (2018). *See also* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

The petitioner argues that the circuit court erred in its conclusion that res judicata barred litigation of the *Baker II* claims for three reasons: first, the claims of failure to accommodate, hostile work environment, and retaliation, were different from the claims raised in *Baker I* in that the specific acts alleged rested upon different evidentiary bases; second, the parties in *Baker I* and *Baker II* were different because Jay Starcher was not a party to *Baker II* and respondent Crislip was not a party to *Baker I*; and third, the petitioner could not have litigated the *Baker II* claims in *Baker I*, because amendment of her complaint to include those claims was precluded by the deadline set forth in the scheduling order. We address these contentions in turn.

5

This Court has consistently stated that "[t]he doctrine of res judicata is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once." *White v. SWCC*, 164 W. Va. 284, 289, 262 S.E.2d 752, 756 (1980) (citing *Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W. Va. 698, 127 S.E. 644 (1925)); *see also Conley v. Spillers*, 171 W. Va. 584, 588, 301 S.E.2d 216,219 (1983) (res judicata seeks "to prevent a person from being 'twice vexed for one and the same cause[.]'") (quoting *State ex rel. Connellsville By-Product Coal Co. v. Cont'l Coal Co.*, 117 W. Va. 447, 449, 186 S.E. 119, 120 (1936)). Although acknowledging that the term res judicata has been modernized and is now frequently referred to as claim preclusion, this Court recently recognized that its function has not changed: it "'prohibits "splitting" a claim or cause of action. Claims that could have been raised by a prevailing party in the first action are merged into, and are thus barred by, the first judgment.'" *Bison Ints., LLC v. Antero Res. Corp.*, __ W. Va. __, __, __ S.E.2d __, __, 2020 WL 7223172, at *5 (2020) (quoting *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. 2002)).

The lodestar principles governing application of the doctrine of res judicata were set forth in syllabus point one of *Sayre's Adm'r v. Harpold*, 33 W. Va. 553, 11 S.E. 16 (1890):

> An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the

6

> action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*."

*Sayre's*, 33 W. Va. at 553, 11 S.E. at 16.[5] Thereafter, in syllabus point 4 of *Blake v. Charleston Area Medical Center., Inc*., 201 W. Va. 469, 498 S.E.2d 41 (1997), this Court synthesized many of its post-*Sayre's* precedents and established a three-part test for determining whether res judicata bars a cause of action:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

---

[5] Syllabus point one of *Sayre's* has been carried forward to the present day, without change, since its formulation 131 years ago. Syl. Pt. 1, *In re Estate of McIntosh*, 144 W. Va. 583, 109 S.E.2d 153 (1959); Syl. Pt. 1, *Conley*, 171 W. Va. at 586, 301 S.E.2d at 217; Syl. Pt. 3, *Slider v. State Farm Mut. Auto. Ins. Co*., 210 W. Va. 476, 557 S.E.2d 883 (2001); Syl. Pt. 4, *Lloyd's, Inc. v. Lloyd,* 225 W. Va. 377, 693 S.E.2d 451 (2010); Syl. Pt. 2, *Bison*, __ W. Va. at __, __ S.E.2d at __, at *1. We note that the final sentence of the syllabus point in *Sayre's*, "[a]n erroneous ruling of the court will not prevent the matter from being *res judicata*[,]" was dicta, because in *Sayre's* and every successive case, either the relevant ruling in the first case was not appealed (*Sayre's*, *Conley*, *Lloyd's*, *Bison*), the first case was settled (*McIntosh*), or there was no prior ruling from the first case at issue in the second (*Slider*). Thus, this Court has never been called upon to determine the effect of a ruling that is judicially deemed to have been erroneous; and further, we are not called upon to do so in the instant case, since the petitioner did not appeal the circuit court's judgment in *Baker I. See* text *infra*.

*Id*. at 471, 498 S.E.2d at 43. The third prong of the *Blake* test "is most often the focal point, since 'the central inquiry on a plea of *res judicata* is whether the cause of action in the second suit is the same as the first suit.'" *Beahm v. 7 Eleven, Inc.*, 223 W. Va. 269, 273, 672 S.E.2d 598, 602 (2008) (citing *Conley*, 171 W. Va. at 588, 301 S.E.2d at 220). The genesis of the requirement that causes of action be "identical" traces back to this Court's decision in *Soto v. Hope Nat. Gas Co.,* 142 W. Va. 373, 95 S.E.2d 769 (1956), where we held in syllabus point one that "[o]ne of the essentials of *res judicata* is that the issue raised in the second action or suit must be identical with the issue raised and determined in the first action or suit." *Id.* at 373, 95 S.E.2d at 769. In the instant case, the issue before us is whether the causes of action asserted in *Baker II* were identical to those determined in *Baker I*, or if not, were such that they could have been resolved, had they been presented, in the prior action.

In this regard, the petitioner first claims that the causes of action in *Baker II* were not identical because, although they were of a similar type (discrimination, harassment and retaliation) as the causes of action asserted in *Baker I*, the factual specifics of the claims were necessarily different because the alleged incidents post-dated those set forth in the *Baker I* complaint. This argument is wholly unconvincing, as it treats the allegations in the *Baker I* complaint as if they were fixed and immutable, incapable of amendment or supplementation pursuant to Rule 15 of the West Virginia Rules of Civil Procedure, "Amended and Supplemental Pleadings." Of specific relevance to this case, Rule 15(d) provides in relevant part that "[u]pon motion of a party the court may, upon

8

reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth *transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.*" (Emphasis added.)

This Court has held repeatedly that Rule 15 is to be liberally construed. *See, e.g., Calif. State Tchrs.' Ret. Sys. v. Blankenship*, 240 W. Va. 623, 814 S.E.2d 549 (2018). In *Blankenship*, we found that,

> motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

240 W. Va. at 631, 814 S.E.2d at 557; *see also Hawkins v. Ford Motor Co.*, 211 W. Va. 487, 491, 566 S.E.2d 624, 628 (2002); *McCoy v. CAMC, Inc.*, 210 W. Va. 324, 329, 557 S.E.2d 378, 383 (2001). The purpose of this liberality rule is "to promote substantial justice and, in accordance with the requirement of R.C.P. 1, [to do so] in such a manner as 'to secure the just, speedy, and inexpensive determination of every action.'" *Perdue v. S. J. Groves & Sons Co.*, 152 W. Va. 222, 232, 161 S.E.2d 250, 257 (1968) (internal citation omitted).

In the instant case, the petitioner never moved to amend or supplement her complaint to add the additional allegations; rather, she attempted to raise them in her response to the respondents' motion for summary judgment, as well as her pretrial

memorandum and her response to motions in limine. The circuit court refused to consider the allegations at that point on the ground that they were not set forth in the complaint and were therefore not a part of the case; and whether that ruling was erroneous or an abuse of discretion will never be known, since the petitioner did not appeal from the final judgment. In this regard, we conclude that *Lloyd's* is dispositive of the petitioner's case.

In *Lloyd's*, the plaintiff, Greg Lloyd ("Greg") brought suit against his father, Charles Lloyd ("Mr. Lloyd"), his brother, Chuck Lloyd ("Chuck"), and a business jointly owned by the brothers. Mr. Lloyd filed a counterclaim against Greg and a third-party complaint against Lloyd's, Inc. ("Lloyd's"), a business owned by Greg, for unpaid rent and for repayment of a $132,000.00 loan secured by a note. During the course of the proceedings, Mr. Lloyd filed a motion for summary judgment on his counterclaim and third-party complaint. In response, Greg and Lloyd's asserted that Mr. Lloyd had misapplied payments made in partial payment of the note; however, neither Greg nor Lloyd's moved to amend their pleadings to add a cause of action or a defense, respectively, of misappropriation or conversion. Accordingly, the circuit court found that the assertion of this defense came too late, ruling that the "issues . . . unfortunately . . . aren't in this lawsuit." *Id.* at 380, 693 S.E.2d at 454. Subsequently, the court entered judgment as a matter of law in favor of Mr. Lloyd on his third-party claim for $132,000.00. *Id.* Both

10

Greg and Chuck appealed,[6] and this Court refused both petitions. *Id*. at 380-81, 693 S.E.2d at 454-55. Significantly, in his appeal Greg did not raise the circuit court's refusal to consider his misappropriation/conversion evidence, and Lloyd's did not appeal at all.

Subsequently Lloyd's sued Mr. Lloyd, alleging that he had misappropriated, misapplied, and/or converted payments that Lloyd's had already made in satisfaction of the $132,000.00 debt. *Id*. at 381, 693 S.E.2d at 455. The circuit court granted Mr. Lloyd's motion to dismiss the complaint on grounds of res judicata, finding that "[w]hile the cause of action in this case is not precisely the same as that in the prior case, it could have been resolved had it been properly presented in the prior action." *Id*. The court also denied Lloyd's motion to amend its complaint to add another defendant, Lloyd Stave Co., a company owned by Mr. Lloyd, finding that Lloyd Stave Co. could have, and should have, been added as a party in the original action. *Id*. at 382, 693 S.E.2d at 456.

On appeal, Lloyd's argued that res judicata should not be a bar to its claims because both Greg and Lloyd had attempted to assert them in the prior litigation but were prohibited in doing so by the circuit court. This Court disagreed, noting that "(1) Greg Lloyd did not assign error to such ruling when he appealed . . . and (2) Lloyd's did not file any appeal whatsoever from the circuit court's final order." *Id*. at 385, 693 S.E.2d at 459.

---

[6] It is unclear from the opinion why Chuck appealed, since all of the Court's discussion in the case deals with Mr. Lloyd's claims against Greg and Lloyd's.

11

Accordingly, "any possible avenues of relief from this ruling have been foreclosed by Lloyd's failure to preserve this issue for appellate consideration by filing an appeal in the prior litigation, and Lloyd's may not relitigate the wisdom of the circuit court's previous rulings *in the instant proceeding*." *Id*. at 385-86, 693 S.E.2d at 459-60.

Turning back to the instant case, in both her opening brief and her reply brief, the petitioner studiously ignores *Lloyd's* and focuses instead on three other cases, *White v. SWCC*, 164 W. Va. 284, 262 S.E.2d 752 (1980), *Blake*, 201 W. Va. 469, 498 S.E.2d 41, and *Slider*, 210 W. Va. 476, 557 S.E.2d 883. In *White*, the issue before the Court was whether the nonmedical finding of "no harmful exposure" in a claimant's initial application for occupational pneumoconiosis benefits precluded consideration of the claimant's prior work history in a subsequent application for benefits based on continued exposure after the filing date of the first claim. In this regard, the Court first recited what it deemed to be "[a] statement of the general rule" that "a judgment rendered on the merits by a court of competent jurisdiction in a proceeding precludes subsequent litigation between the same parties of all matters adjudicated in the first proceeding and those which could have been decided there." *White*, 164 W. Va. at 289, 262 S.E.2d at 756. Thereafter, however, we concluded that res judicata was not a bar under the particular circumstances of the case, because "occupational pneumoconiosis is a condition which develops as a result of *gradual* impaction of dust particles[.]" *Id*. at 290-91, 262 S.E.2d at 756-57 (emphasis added). Thus,

> [w]hile appellant has been judged not to have been harmfully
> exposed to the hazards of occupational pneumoconiosis as of
> May 29, 1973, it is possible that the evidence of his exposure

12

> for the 13 months he continued to work after that date, when considered along with his prior work history, might lead to a findings [sic] of exposure sufficient to support an award of benefits.

*Id*. at 291, 262 S.E.2d at 757.[7]

It is readily apparent that *White* does not apply to the instant case. The critical factor in the Court's analysis was its recognition that gradual progression of harmful exposure may ultimately lead to pneumoconiosis, meaning that insufficient exposure in 1973 does not, as a matter of undisputed scientific fact, preclude the possibility of sufficient exposure in 1974. Here, in contrast, the petitioner has alleged a number of discrete incidents of tortious conduct, all of which occurred during the pendency of *Baker I* and all of which could have been litigated in that case, had the petitioner timely moved for leave to do so.

Turning to *Blake*, also relied upon by the petitioner, the issue before the Court was whether the plaintiffs' claims of fraud and misrepresentation against the defendant hospital were barred by res judicata. The circuit court had concluded that they were, because they could have been raised as counterclaims in the hospital's prior collection suit

---

[7] In the concluding paragraph of the opinion, the Court listed a number of other factors at play in its decision: the "scope and purpose of the Workmen's Compensation Act," the quasi-judicial forum in which claims are decided, case law indicating that the doctrine of res judicata "is not rigidly enforced where to do so would defeat the ends of justice[,]" and the fact that the original claim had been rejected on procedural, not substantive, grounds. *White*, 164 W. Va. at 291-92, 262 S.E.2d at 757.

13

against the plaintiffs.  This Court disagreed, noting that the plaintiffs had not discovered the factual basis for their claims until well after the final judgment in the collection action, specifically, that the hospital had entered into an agreement with the plaintiffs' medical insurer that it would accept the amounts paid by the insurer as payment in full – and then went ahead nonetheless and billed the plaintiffs for the amounts not covered by their insurance.  Under these facts, we concluded that "an exception to the preclusion of claims that previously could have been determined exists where the party bringing the subsequent lawsuit claims that fraud, mistake, concealment, or misrepresentation by the defendant of the second suit prevented the subsequent plaintiff from earlier discovering or litigating his/her claims." *Blake*, 201 W. Va. at 477, 498 S.E.2d at 49 (citations omitted).

Again, it is readily apparent that *Blake* does not apply to the instant case.  The petitioner does not allege that any of the allegations in *Baker II* were undiscovered or unknown while *Baker I* was pending; indeed, those allegations were the subject of discovery in *Baker I*, and the petitioner raised the claims in her response to respondents' motion for summary judgment.

Finally, we examine the petitioner's reliance on *Slider*.  The issue in that case was whether the doctrine of res judicata barred plaintiff from bringing a bad faith action against her insurer following litigation of the underlying contract and tort claims action, in which action plaintiff had substantially prevailed.  We held that it did not, because "[t]he conditions and predicate for bringing a case under *Jenkins v. J.C. Penney Casualty*

14

*Insurance Company*, 167 W. Va. 597, 280 S.E.2d 252 (1981), are *wholly different* from those necessary for bringing an underlying contract action or for bringing an action under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W. Va. 323, 352 S.E.2d 73 (1986)." *Slider*, 210 W. Va. at 483, 557 S.E.2d at 890 (emphasis added).

Here, in contrast, the "conditions and predicate for bringing the claims" in *Baker II* are the same as those in *Baker I*, notwithstanding that the specific incidents of discrimination, harassment and/or retaliation may differ. Indeed, the petitioner does not really argue that the claims in *Baker II* are such that they could not have been litigated in *Baker I*; rather, she argues that she should not have been required to bring them because, as a practical matter, adding the claims might well have occasioned discovery delay and postponement of the scheduled trial date. Carrying this argument to its logical extreme, the petitioner argues that a defendant tortfeasor could prevent a case from ever going to trial by continuing to commit tortious acts, each one requiring a plaintiff to amend his or her complaint again, and on and on ad infinitum. Although we acknowledge the force of this argument in a proper case, it is not borne out under the facts presented here. The first act alleged in *Baker II* occurred in 2017, and the last act in July, 2018, which was three months before the discovery cutoff date and five months before the scheduled trial in *Baker I*. Thus, a timely motion to amend or supplement the complaint would have occasioned

15

minimal, if any, delay in getting the case to trial.[8]  In short, the facts in the petitioner's case present no occasion for this Court to consider whether we should carve out an exception to the otherwise inflexible res judicata test beyond those set forth in *Blake*.[9]

Next, the petitioner alleges that res judicata is not a bar to litigation of the *Baker II* claims because the second prong of the *Blake* test is not met: that "the two actions must involve either the same parties or persons in privity with those same parties." *Blake*, 201 W. Va. at 471, 498 S.E.2d at 43, Syl. Pt. 4, in part.  This requirement, which is obviously grounded in due process concerns, ensures that "any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim." *State ex rel Clifford v. W.Va. Office of Disciplinary Couns.*, 231 W. Va. 334, 340, 745 S.E.2d 225, 231 (2013) (citing *Conley*, 171 W. Va. at 586, 301 S.E.2d at 217)).  Petitioner

---

[8] In this regard, there is no dispute that most, if not all, of the *Baker II* allegations were the subject of discovery in *Baker I*, even though they had never been made a part of the case in an amended complaint.

[9] Some courts have recognized an exception to strict application of the doctrine of res judicata on equitable grounds that are fact specific.  *See, e.g., Rucker v. Schmidt*, 794 N.W.2d 114, 116-17 (Minn. 2011) ("before res judicata can be applied, the district court is required to analyze whether its application would work an injustice on the party against whom it is urged[.]").  To date, this Court has never recognized an exception to the doctrine other than in situations where "fraud, mistake, concealment, or misrepresentation by the defendant of the second suit prevented the subsequent plaintiff from earlier discovering or litigating his/her claims." *Blake*, 201 W. Va. at 477, 498 S.E.2d at 49.

16

claims that since respondent Crislip was not a party to *Baker I*, she has never had an opportunity to litigate her claims against him.[10]

Under the facts and circumstances of this case, petitioner's argument is wholly misguided. The fact that respondent Crislip was not a party to *Baker I* "does not settle the issue of preclusion because res judicata applies not only to parties to a prior proceeding in which there was a final adjudication but also to those in privity with them." *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 204 W. Va. 465, 477, 513 S.E.2d 692, 704 (1998). Although "[t]here is no generally prevailing definition of privity which can be automatically applied to all cases involving res judicata[,]" *id*. at 478, 513 S.E.2d at 705 (citing 47 Am.Jur.2d *Judgments* § 663, pp. 84-86 (1995)), in *Jordache* we cited the following with approval:

> In determining whether privity exists, courts generally employ a functional analysis, which entails a careful examination of the circumstances of the case and the rights and interests of the parties to be held in privity. Thus, the question of who is a privy is a factual one requiring a case-by-case examination.
>
> * * *

---

[10] Petitioner also argues that because Jay Starcher was a party to *Baker I* but not to *Baker II*, the two actions do not involve the "same parties" within the meaning of *Blake*. The petitioner's brief puts no meat on the bare bones of this assignment of error, and provides neither citations to relevant authority nor citations to the record in support thereof. Accordingly, pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, this Court will disregard what has been termed a "halfhearted assignment" of error. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

17

In general, it may be said that . . . privity involves a person so identified in interest with another that he represents the same legal right."

204 W. Va. at 478, 513 S.E.2d at 705.  We expanded upon this formulation in *Rowe v. Grapevine Corp.*, 206 W. Va. 703, 527 S.E.2d 814 (1999), holding that privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within the res judicata." *Id*. at 715, 527 S.E.2d at 826 (citation omitted).  With respect to employment cases, although "in general, the employer/employee relationship is sufficient to establish privity," *Emeson v. Department of Corrections*, 376 P.3d 430, 441 (Wash. Ct. App. 2016) (citation omitted), the determination of whether an employee is in privity with the employer for purposes of res judicata is always a fact-driven inquiry.  *See, e.g.*, *Warner v. German*, 642 A.2d 239, 245 (Md. Ct. Spec. App. 1994) ("[w]hile the common interests implicit in an employment relationship ordinarily would tend to bind employers and employees in privity for the purpose of res judicata . . . a court must examine whether [the parties in question] enjoyed the procedural protections to which they were entitled"); *State ex rel. Schachter v. Ohio Pub. Emp. Ret. Bd.*, 2008 WL 2809217, at *5 (Ohio Ct. App. 2008), *aff'd*, *State ex rel. Schachter v. Ohio Pub. Emp. Ret. Bd.*, 905 N.E.2d 1210 (Ohio 2009) (to similar effect).

In examining the facts of the instant case, we have no difficulty in finding that respondent Crislip is and was in privity with respondent Chemours, the primary defendant in both *Baker I* and *Baker II*.  Respondent Crislip, as was Jay Starcher before

18

him, was alleged to be in the petitioner's supervisory chain at Chemours' facility, closing his eyes to acts of discrimination against her and aiding and abetting Chemours in its campaign of harassment and discrimination. In this regard, "[o]ne relationship long held to fall within the concept of privity is that between a non-party and party who acts as the nonparty's representative." *Rowe*, 206 W. Va. at 715, 527 S.E.2d at 826; *see also Horne v. Lightning Energy Serv., L.L.C.*, 123 F.Supp.3d 830, 840 (N.D.W. Va. 2015) (manager shared "substantial identity of interest" with defendant employer because "the claims alleged against these parties all arose out of the same factual circumstances."). Further, it will be recalled that all of the allegations involving respondent Crislip took place while *Baker I* was still pending and at least some of them were the subject of discovery in that case. Thus, there can be no claim that the petitioner was deprived of her opportunity to litigate her claims against respondent Crislip; if she wanted to impose individual liability on him, she could have, and should have, moved to amend her complaint in *Baker I* to add him as a party defendant. Finally, there are no due process concerns in the instant case, since the petitioner was a party to both *Baker I* and *Baker II* and therefore "had a prior opportunity to have litigated [her] claim." *Clifford,* 231 W. Va. at 340, 745 S.E.2d at 231 (citations omitted).

Finally, the petitioner argues that she could not have litigated her *Baker II* claims in *Baker I* because the scheduling order in *Baker I* set a cutoff date of September 15, 2017, for amendment of pleadings. Again, as was the case with respect to her earlier argument concerning the allegations in the *Baker I* complaint, the petitioner treats the

deadlines in the scheduling order as something fixed and immutable – which they are not, either in theory or in practice. In this jurisdiction, scheduling orders are established in circuit court proceedings pursuant to the provisions of Rule 16(b) of the West Virginia Rules of Civil Procedure.

> Rule 16(b) of the West Virginia Rules of Civil Procedure [1998] requires active judicial management of a case, and mandates that a trial court 'shall . . . enter a scheduling order' establishing time frames for the joinder of parties, the amendment of pleadings, the completion of discovery, the filing of dispositive motions, and generally guiding the parties toward a prompt, fair and cost-effective resolution of the case. Syl. Pt. 2, *Caruso v. Pearce*, 223 W.Va. 544, 546, 678 S.E.2d 50, 52 (2009).

Syl. Pt. 1, *State ex rel. Almond v. Rudolph*, 238 W. Va. 289, 794 S.E.2d 10 (2016).[11] Both Rule 16(b) and 16(e) permit modification of a scheduling order by leave of the judge. Although this Court has held that the entry of a scheduling order is mandatory prior to the court's consideration of dispositive motions, *Elliott v. Schoolcraft*, 213 W. Va. 69, 73 & n.5, 576 S.E.2d 796, 800 & n.5 (2002), we have made it clear that enforcement of the time limits in an order is within the court's broad discretion to control its docket. *Almond*, 238 W. Va. at 296, 794 S.E.2d at 17; *McCoy*, 210 W. Va. at 328, 557 S.E.2d at 392; *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W. Va. 155, 161, 451 S.E.2d 721, 727 (1994). The standard for modification of a scheduling order "is by implication lower than

---

[11] Although this case appears in both the West Virginia Reports and the South Eastern Reporter as *State ex rel. Almond v. Rudolph*, we note that the correct title should be *State ex rel. Almond v. Murensky*. McDowell County Circuit Judge Rudolph J. Murensky, Jr., was the respondent in this petition for extraordinary relief.

that contemplated in amending a final pre-trial order, which should only be done 'to prevent manifest injustice.'" *State ex rel. Crafton v. Burnside*, 207 W. Va. 74, 78, 528 S.E.2d 768, 772 (2000) (citing Rule 16(e)), *subsequent mandamus proceeding sub nom. State ex rel. Atkins v. Burnside*, 212 W. Va. 74, 569 S.E.2d 150 (2002).

With this legal framework in mind, we turn once again to the facts of the instant case. The original scheduling order in *Baker I* set a September 15, 2017, deadline for joinder of parties or amendment of pleadings. In November, 2017, by agreement of the parties, the scheduling order was amended by the court, extending discovery through October 4, 2018, and establishing a new trial date of December 4, 2018. Significantly, at least some of the acts alleged in the *Baker II* complaint had already occurred by mid-November, 2017, when the parties submitted their agreed amended scheduling order; and the last of the acts alleged in *Baker II* occurred in July, 2018, three months before the close of discovery and five months before the scheduled trial date in *Baker I*. Notwithstanding these undisputed facts, the petitioner never sought to extend the deadline for joinder or amendment, either at the time of the agreed-upon amendments to the initial scheduling order or at any time thereafter. The record is silent as to whether this was a strategy decision, however misguided, a simple oversight, or something else entirely.

The petitioner contends that as a litigant in *Baker I*, she had a right "to rely on the court's scheduling order," which set a date beyond which she could not amend her complaint. We find this argument to be completely disingenuous in that it ignores the

parties' right to seek amendment of any scheduling order – which actually happened in this case, with the agreement of all parties – and the circuit court's right to grant such a request pursuant to either Rule 16(b) or (e) of the West Virginia Rules of Civil Procedure. Where, as here, the new allegations all occurred while the initial litigation was pending; there was a concurrence of identity between the new allegations and those set forth in the initial complaint, as well as a concurrence of identity between and among the parties; the new allegations were the subject of discovery in the initial litigation; and there was sufficient time to develop the new allegations prior to the close of discovery and the scheduled trial date, then it was incumbent upon petitioner to timely move the court for relief, whether by seeking leave to amend the complaint or otherwise. Had she done so and the circuit court granted the motion, then the issues presented here would be moot. Had she done so and the circuit court denied the motion, then she could have raised this as an issue on appeal. What the petitioner cannot do is to litigate this issue in *Baker II* after failing to raise it on appeal in *Baker I*.

## IV. Conclusion

For the foregoing reasons, the judgment of the Circuit Court of Wood County, West Virginia, is affirmed.

Affirmed.

22